[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 556 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 557 
On the night of December 3, 1976, Billy White, an eighteen year old Baldwin County High School student, and Cheri Prine, a fifteen year old student, were killed in an automobile collision in Baldwin County. The twenty year old appellant was indicted for their murders by perpetrating an act greatly dangerous to the lives of others and evidencing a depraved mind without regard for human life. A jury convicted him of murder in the second degree and fixed his punishment at twenty-one years' imprisonment. The appellant's request for Youthful Offender Treatment was denied because the appellant had "a running record of traffic violations" including reckless driving, driving while intoxicated and driving without a license. His motion that he be committed to a state mental institution for treatment and evaluation was granted. At trial the appellant was represented by retained counsel who was appointed on this appeal.
The sufficiency of the evidence to support the conviction has not been challenged. As there was no motion to exclude the state's evidence, no request for the affirmative charge, no exceptions reserved to the oral charge of the trial court, and no motion for a new trial, the question of the sufficiency of the evidence to support the conviction is not presented on appeal. Robinson v. State, 44 Ala. App. 206, 205 So.2d 524
(1967); Alexander v. State, 281 Ala. 457, 204 So.2d 488 (1967);Anderson v. State, Ala.Cr.App., 339 So.2d 166 (1976). Yet, having reviewed the evidence we find that it was ample to support the verdict.
The evidence presented by the state, in its barest essentials, reveals that around 4:45 on the afternoon of December 3, 1976, the appellant began drinking beer and soon switched to whiskey. By 10:00 o'clock that night the appellant was intoxicated. A waitress at the Little Dutchman Lounge testified that the appellant was incapable of driving safely and refused to serve him any beer. The appellant left before she could call his parents to come take him home.
The collision occurred on Alabama Highway 112, the Old Pensacola Road, in Baldwin County. The point of impact was determined to be in the lane rightfully occupied by Billy White and Cheri Prine. The appellant was driving in the wrong lane at *Page 558 
a speed of approximately one hundred miles an hour in an intoxicated condition when the collision occurred. The Chevrolet Vega driven by White was traveling approximately forty-five miles an hour and was repelled backwards a distance of ninety-three feet from the point of impact. The Ford driven by the appellant traveled in its original direction for a distance of one hundred seventy-six feet from the point of impact before finally stopping. No skid marks were found at the scene.
The defense called several witnesses including the appellant who testified that the appellant was not drunk on the night of the collision. Several other witnesses attested to the appellant's good reputation in the community.
 I
Initially the appellant argues that the trial court improperly denied his motion for a change of venue. In support of this argument the appellant argues that
 "the defendant was from across the tracks; that the parties who were killed were a local football hero and a cheerleader. They were close enough to the Solicitor that he cried when trying to read the indictment and apparently close enough to the judge that he refused a bond without any logical reason except prejudice."
Additionally it is argued that the motion for change of venue should have been granted because eleven of the thirty-nine veniremen were excused because "they expressed a fixed opinion or prejudice." The record does not disclose the nature of this fixed opinion or bias.
The only evidence offered in support of the motion for a change of venue was an affidavit of defense counsel that he had made "limited inquiries of several people in Bay Minette and in this general area" and the "consensus of opinion was that it was very doubtful" that the appellant could receive a fair trial in Baldwin County.
The mere belief of the defendant or of the witnesses he is able to produce that he cannot receive an impartial trial is not enough to entitle him to a change of venue. Patton v.State, 246 Ala. 639, 21 So.2d 844 (1945); Campbell v. State,257 Ala. 322, 58 So.2d 623 (1952); Mathis v. State, 280 Ala. 16, 189 So.2d 564, cert. denied, 386 U.S. 935, 87 S.Ct. 963,17 L.Ed.2d 807 (1966).
A defendant has a right to a change of venue only if it is clearly shown that a fair and impartial trial may not be had in the county in which the indictment was found. In Jackson v.State, 104 Ala. 1, 4, 16 So. 523 (1894), the Supreme Court of this state noted:
 "Facts and circumstances rendering such a trial improbable must appear. The mere belief of the party applying, or of the witnesses he is enabled to produce, that such trial can not be had, will not suffice. 1 Bish.Cr.Proc. § 71; Salm v. State, 89 Ala. 56, 8 So. 66. The affidavits consist largely in the mere expression of the opinion of the parties making them, and no distinct, tangible facts are stated, which, in our opinion, would have justified the circuit court in granting the application."
An affidavit containing a mere expression of opinion, that one accused of crime can, or cannot, have a fair and impartial trial, is worthless as evidence, pro or con, unless it is supported by sufficient reasons, testified to as facts. Salm v.State, 89 Ala. 56, 59, 8 So. 66 (1889). In ruling on a motion for a change of venue the trial court must "be governed more by the facts of the case, as proved or admitted, and legitimate inferences from them, than by the mere opinions of witnesses, which are unsupported by facts". Seams v. State, 84 Ala. 410,413, 4 So. 521, 522 (1887).
When the defendant applies for a change of venue, it is his burden to show to the reasonable satisfaction of the court that an impartial trial and an unbiased verdict cannot be reasonably expected in that county. Gilliland v. State, 291 Ala. 89,277 So.2d 901 (1973); Peoples v. State, Ala.Cr.App., 338 So.2d 515
(1976). In McLaren v. State, Ala.Cr.App., 353 So.2d 24, 32, cert. denied, Ala., 353 So.2d 35 (1977), this court held *Page 559 
that an affidavit by defense counsel that he had talked to at least fifty or sixty people about the homicide and that ". . . all expressed the opinion that . . . the defendant, . . ., was guilty" was insufficient to support a motion for a change of venue.
The record in this case fails to establish that the defendant could not receive a fair and impartial trial in Baldwin County.Denton v. State, 263 Ala. 311, 82 So.2d 406 (1955). Without indulging any presumption in favor of the ruling of the trial court on the motion. Malloy v. State, 209 Ala. 219, 96 So. 57
(1923); Maund v. State, 254 Ala. 452, 48 So.2d 553 (1950), we find that the evidence supporting the motion is simply insufficient to justify a change of venue or for this court to conclude that the trial judge abused his discretion in denying the motion. The jury's verdict and punishment would justify this conclusion.
Though the District Attorney for Baldwin County apparently lost his composure while reading the indictment at the arraignment of the appellant, this occurred some ten days before the appellant was brought to trial. The trial was prosecuted by the Chief Assistant District Attorney for Mobile County and it does not appear that the Baldwin County District Attorney was even present.
The trial judge initially refused to fix bail following the arrest of the appellant because of the appellant's past driving record. The trial judge also specifically found that releasing the appellant would not have been to the best interest of the general public and "feared" that "he might get out and cause great bodily harm as a result of drinking and driving a motor vehicle". It appears and counsel alleges in brief that bond was set at some date before trial. Despite the reasoning behind the denial of bail by the trial judge, such denial was improper. In Alabama, an accused upon arrest and before conviction, is entitled to bail as an absolute right provided he has sufficient sureties. Bail may only be denied in capital offenses, when the proof is evident or the presumption great. Section 16, Constitution of Alabama 1901. Ex parte Bynum,294 Ala. 78, 312 So.2d 52 (1975); Ex parte Carlisle, 57 Ala. App. 216, 326 So.2d 775, cert. denied, 295 Ala. 396, 326 So.2d 776
(1975). Here however, the trial judge set bail some time before trial at the request of defense counsel. No mandamus or habeas corpus proceedings were invoked. On appeal this is not asserted or argued as a cause for reversal. The appellant is not alleged to have been prejudiced by this delay in setting bail. Though the record does reveal that bail was requested on two occasions, no objection was taken when bail was not set. On appeal it is argued only that this served as an indication of the bias and prejudice of the trial judge. Though the appellant maintains that both the District Attorney and the trial judge were biased and prejudiced no motion to recuse was ever filed. In view of these circumstances we will not reverse the judgment of the trial court for denying the motion for a change of venue.
 II
The second argument advanced by the appellant for reversing his conviction is that the conduct of the prosecuting attorney was improper and created an atmosphere in which the appellant could not receive a fair trial.
Specifically the appellant alleges as error the following actions or comments of the District Attorney: (1) Showing that the two victims were closely related to football in high school and arguing that "the whistle is going to blow in the Baldwin County High School stadium had it not been for this murderer"; (2) beginning his examination of the first witness with the phrase "tell the folks of Baldwin County"; (3) proving and arguing that the victims had only been drinking coca cola before their death while the appellant had been drinking or "belting down whiskey"; (4) asking a state toxicologist, "What you are saying is that from your .207 you are twice as drunk as the legal. . . ."; (5) repeating the answers of witnesses; (6) repeating testimony *Page 560 
of other witnesses in questioning the witness before him; (7) asking a highway patrolman, "did a jolt that hard bring out the alcohol you smelled on the defendant that night"; (8) referring to the appellant's "drinking buddies"; (9) referring to the appellant as "your good friend Buck" in cross examining a defense witness; (10) addressing the jury and not the witness during his examination at trial and making "jury speeches"; (11) questioning the appellant about the Vega he "creamed"; (12) attributing to the appellant statements that were not made or were incorrect; (13) shaking his finger in the appellant's face in final summation before the jury; (14) arguing in final summation "and then for Mr. Brantley (defense counsel) to turn around and tell you `what if it had been the reverse' you know what that is, that's a low down trick"; and (15) repeatedly referring to the appellant as a murderer.
The appellant argues that the cumulative effect of the prosecutor's trial tactics creates reversible error. We have reviewed each and every allegation of error, including others not listed above, and find that the cumulative effect of these alleged errors does not demand a reversal. Some of defense counsel's objections were not well taken, other objections were not raised at trial or were not timely interposed. In some instances the trial judge sustained defense counsel's objection or instructed the jury to disregard. In other instances a ruling was not secured to the objection or motion. In certain cases the prosecutor's questions were entirely proper or at least within the discretion of the trial judge. In other cases the prosecutor's conduct may have been improper yet not prejudicial to the appellant. Since no single instance of alleged improper conduct constituted reversible error, we do not consider their cumulative effect to be any greater.
The primary duties of the office of the District Attorney are to see that justice is done, Adams v. State, 280 Ala. 678,198 So.2d 255 (1967), and to see that the state's case if properly presented to the court and jury as made by the evidence.Wilbanks v. State, 28 Ala. App. 456, 458, 185 So. 770 (1939);Williams v. State, 34 Ala. App. 253, 39 So.2d 29 (1949).
 "The office of solicitor is of the highest importance; he is the representative of the state, and as a result of the important functions devolving upon him as such officer necessarily holds and wields great power and influence, and as a consequence erroneous insistences and prejudicial conduct upon his part tend to unduly prejudice and bias the jury against the defendant; this, without reference to the instructions of the court. The test in matters of this kind is not necessarily that the conduct of the solicitor complained of did have such effect upon the jury, but might it have done so?"
 Taylor v. State, 22 Ala. App. 428, 429, 116 So. 415, 416 (1928); Jones v. State, 23 Ala. App. 493, 495, 127 So. 681 (1930); Bynum v. State, 35 Ala. App. 297, 298, 47 So.2d 245, cert. denied, 254 Ala. 22, 47 So.2d 247
(1950).
In the performance of his duties the District Attorney should treat the defendant fairly and the witnesses courteously, both in examination and in argument. Campbell v. State, 19 Ala. App. 349,352, 97 So. 783 (1923). The prosecuting attorney has a duty to be fair and impartial in presenting the evidence and in examining or cross examining witnesses. Melton v. State,21 Ala. App. 419, 109 So. 114 (1926). While he may not take unfair advantage of a defendant, he is under a duty to prosecute with earnestness and vigor. Arant v. State, 232 Ala. 275,167 So. 540 (1936).
 "We are in full accord with the holding that a prosecuting officer should be fair and take no undue advantage of the accused. But the argument here advanced would require more, and would leave out of consideration the solicitor's conviction that he was discharging a duty to society by his prosecution of the accused whom he honestly believed guilty, and it would leave out of consideration the human element that in the heat of debate some harsh expression, though justified by the proof, fell from his lips. The proprieties *Page 561 
must not be overreached. But, after all, we must not lose sight of the fact that a trial is a legal battle, a combat in a sense, and not a parlor social affair. The solicitor is yet under duty to prosecute with earnestness and vigor — to strike hard blows, but not foul ones. Berger v. U.S., supra. (295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314)." Arant, at 232 Ala. 280, 167 So. at 544.
The prosecuting attorney owes a duty to exercise his full powers in furtherance of society's valid and strong interest in enforcement of criminal laws, not only in seeing that the guilty are punished but that criminal acts by others are discouraged by example of such punishment. Ash v. State,33 Ala. App. 456, 460, 34 So.2d 700, cert. denied, 250 Ala. 417,34 So.2d 704 (1948). Trials are adversary in nature and a vigorous prosecution and defense is to be expected. Neither side should be hampered too closely in making its particular presentation.Edwards v. State, 56 Ala. App. 405, 410, 321 So.2d 744 (1975);Bullard v. State, 40 Ala. App. 641, 645, 120 So.2d 580 (1960).
While the prosecuting attorney should not endeavor to introduce legally inadmissible evidence he should be allowed full range within the law to bring out all the material evidence he has good reason to believe will shed light on the commission of the alleged offense. 23A C.J.S. Criminal Law § 1087, p. 115.
Questions as to the prosecuting attorney's conduct in examining or cross examining witnesses must ordinarily be left to the sound discretion of the trial court. Windom v. State,18 Ala. App. 430, 93 So. 79, cert. denied, 208 Ala. 701, 93 So. 924
(1922); Whitfield v. State, 21 Ala. App. 490, 109 So. 524
(1926); Evans v. State, 42 Ala. App. 587, 172 So.2d 796 (1965). He should examine witnesses with dignity, decorum, and due consideration, Campbell, supra, and should not take advantage of his position to abuse, insult, or ridicule them. Brasher v.State, 22 Ala. App. 79, 112 So. 535 (1927).
 "On the other hand, a prosecuting attorney may use every legal means within his power to test the credibility of witnesses, and the propounding of embarrassing or humiliating questions, where they are pertinent to the issues, does not constitute misconduct." 23A C.J.S. Criminal Law § 1087, p. 117.
In view of these principles and the reasons set forth above we find that the prosecutor's conduct was not prejudicial to the accused. Vigorous and aggressive prosecution should not be mistaken for improper and prejudicial misconduct.
 III
The appellant also asserts that the conduct of the trial judge constitutes reversible error. It is argued that the trial judge (1) initially refused to grant bond and told defense counsel "I wish you would make one of your appeals to see if it is right"; (2) questioned a witness; (3) told defense counsel "I don't need anymore comments from you on it" and later to "sit down"; (4) was "testy" to defense counsel; and (5) not purposefully but erroneously recalled a witness's testimony stating, "Near as I recall he (defendant) said it wouldn't go over 100 miles per hour".
We have most carefully examined and particularly noted every utterance of the court complained of, and our conclusion is that there is no merit whatever in the position taken by appellant's counsel. Nothing transpired during the progress of the entire trial to militate against the constitutional right of defendant to have a fair and impartial trial by jury.
The issue of the initial failure to grant bond has already been discussed in this opinion. The fact that the trial judge was able to reverse his initial ruling and grant bond indicates to this court that he was maintaining an impartial and unbiased opinion toward the defendant.
The trial judge was within his discretion in questioning witnesses.
 "The unquestioned province of the court — in fact, the solemn and sacred duty of a trial judge — is the development and establishment of the truth, and in this connection it is always permissible *Page 562 
for the court, and if it appears necessary for him to do so it is his duty, to propound to witnesses such questions as it is deemed necessary to elicit any relevant and material evidence, without regard to its effect, whether beneficial to the one party or the other. Beal v. State, 138 Ala. 94, 35 So. 58. In fact, it is a sacred duty of a judge, both in civil and criminal cases, to give strict attention to the evidence, and to all facts and incidents attendant upon the trial, to propound questions to witnesses if in his judgment he deems it necessary, and to supervise and control the proceedings before him, with a view that justice may not miscarry." Brandes v. State, 17 Ala. App. 390, 391, 85 So. 824 (1920).
The trial judge is more than a mere moderator and it is his duty to conduct an orderly trial and to make certain as far as possible that there is no misunderstanding of the testimony of witnesses. Thus he may ask any question which would be proper for the prosecutor or defense counsel to ask so long as he does not depart from a standard of fairness and impartiality.Johnston v. City of Birmingham, Ala.Cr.App., 338 So.2d 7
(1976). Generally see Allen v. State, 290 Ala. 339, 342-343,276 So.2d 583 (1973).
The trial court's admonitions to defense counsel were not prejudicial under the circumstances and did not transcend in any particular the duty resting upon the court. Myers v. Townof Guntersville, 21 Ala. App. 559, 110 So. 52 (1926) (Court's admonition to defense counsel that "You have asked that enough" not prejudicial); Vaughn v. State, 236 Ala. 442, 447,183 So. 428 (1938) (Court justified in telling defense counsel not to go further in questioning a witness about a collateral matter);Lee v. State, 16 Ala. App. 548, 79 So. 805 (1918) (Court's statement that further argument was unnecessary); Dennison v.State, 17 Ala. App. 674, 676, 88 So. 211 (1921) (Court directed defense counsel to quit talking so much, to resume his seat and proceed with the trial).
The remarks and admonitions of the trial judge in this case are clearly distinguishable from the errors committed inHolland v. State, 24 Ala. App. 199, 132 So. 601 (1931); Williamsv. State, 34 Ala. App. 253, 39 So.2d 29 (1949); and Moulton v.State, 199 Ala. 411, 416, 74 So. 454 (1917).
We view the statement of the trial judge that "Near as I recall it wouldn't go over 100 miles per hour" as merely an observation by the court that there was certain evidence in the case. The court does not invade the province of the jury by stating that there is or is not evidence of particular facts, when such is the case. Breedwell v. State, 38 Ala. App. 620,624, 90 So.2d 845 (1956); Griffin v. State, 76 Ala. 29, 32
(1884).
Here, on direct examination, in response to defense counsel's question, "Would your car go a hundred miles per hour?", the appellant answered, "I wouldn't know, sir. I've never tried it." Therefore we do not deem the court's statement to constitute improper and prejudicial comment. Additionally we note that defense counsel made no objection to the statement of the court at trial.
 IV
The appellant testified that he never tried to go one hundred miles per hour in his automobile. In rebuttal, the state called Baldwin County Deputy Sheriff Lloyd Smith who testified that he had "clocked" and arrested the appellant for driving at approximately one hundred miles per hour on October 23, 1976. To allow this rebuttal was within the discretion of the trial court and proper. Logan v. State, 291 Ala. 497, 282 So.2d 898
(1973); Goldin v. State, 271 Ala. 678, 127 So.2d 375 (1961);Mauldin v. State, 57 Ala. App. 361, 328 So.2d 612, cert. denied,295 Ala. 411, 328 So.2d 616 (1975); Emerson v. State, 281 Ala. 29, 198 So.2d 613 (1967). The state may, in the discretion of the trial judge, introduce in rebuttal any competent evidence which explains or is a direct reply to, or a contradiction of, material evidence introduced by the defendant. See 6A Alabama Digest, Criminal Law, 683. *Page 563 
 V
On direct examination of the registered nurse who drew some blood samples from the appellant following the collision, the state asked the following question:
 "Q. Let me show you some records from the University of South Alabama Medical Center, and do they have a name at the top, Grady D. Spinkle. And look down the sheet and tell me if your signature or any of your markings are on the hospital report, and if they are tell the jury if your signature is on there or checkmark. How can you identify that piece of paper?"
Defense counsel's objection on the leading nature of the question was overruled and exception was taken. The records themselves had previously been admitted into evidence.
A most comprehensive discussion of leading questions is found in Blunt v. Strong, 60 Ala. 572, 576 (1877).
 "To determine when a question is leading, and, if leading, when it will be allowed in practice, is one of the most difficult questions the practitioner encounters. So much depends on the nature of the fact sought to be proved, and on the temper and bias of the witness, that no general rule can be laid down, which will suit the requirements of every case. All the authorities agree, that direct and leading questions may be propounded to any witness, to lead his mind and attention up to any subject, upon which he is called to testify; and there are many other questions, which are of such character, that the inquiry must be framed in leading form, else the counsel and witness can not be made to understand each other. Proof of hand-writing, of character, of personal identity, and of many other analogous subjects, are of this class. And when a witness is called to testify against what appears to be his interest or bias, or manifests reluctance, hesitation, evasion, or art, in giving his testimony, the court will permit leading questions to be propounded by the party calling him, so as to elicit the full truth, if possible. These rules, if they may be called rules, are so much dependent on the circumstances of the particular case, that they can rarely become the subject of judicial review." (Emphasis added)
The matter of allowing a party to propound leading questions is largely within the discretion of the trial court. See cases cited under 19A Alabama Digest, Criminal Law, 240 (2). Even if the question be considered leading we fail to see how it injured the appellant and conclude that the trial court did not abuse its discretion in overruling defense counsel's objection. Additionally we view this question as dealing with matters preliminary in nature and therefore proper, even if leading. Gamble, McElroy's Alabama Evidence 3rd Ed., p. 252, § 121.05 (6).
 VI
Though the appellant objects to the oral charge of the trial court on the degrees of murder, at trial he took no objection to the court's instructions and announced "satisfied". An instruction not objected to cannot be reviewed on appeal.Wilson v. State, 32 Ala. App. 591, 28 So.2d 646 (1947); Allisonv. State, 281 Ala. 193, 200 So.2d 653 (1967); James v. State,57 Ala. App. 140, 326 So.2d 669 (1976).
 VII
The refusal of the defendant's requested charge on murder in the first degree was not error because it was covered by instructions already given, see 6B Alabama Digest, Criminal Law, 829 (1).
 VIII
The final issue raised by the appellant is that the results of a chemical blood test conducted on the appellant after his admission to the hospital were inadmissible because (1) there was no statutory authority for taking the blood because the appellant was not under arrest and (2) the state failed to lay the statutory predicate showing that the test was performed according to approved methods by an approved individual. *Page 564 
After the collision, the appellant was taken to the emergency room of the University of South Alabama Medical Center. There a blood sample was taken by a registered nurse in accordance with the "hospital policy" of routinely performing a blood test to determine the alcohol content of the blood on patients with head injuries to determine if their symptoms are brought on by ingestion of alcohol or by the accident that occurred. Apparently at the time the blood was drawn the appellant was not under arrest and had not been charged with any criminal violation. The test was not given at the direction of any law enforcement officer but upon the request of a physician. While the nurse did not request the appellant's verbal permission, a written permission was signed on the back of the chart.
At trial defense counsel objected to the introduction of the results of the test "without first showing they had permission for the test". No objection because of improper predicate was made.
A general objection to the admission of the test results was insufficient and properly overruled because the evidence could have been made legally admissible by other testimony or evidence. Caldwell v. State, 282 Ala. 713, 213 So.2d 919
(1968); Parker v. State, 280 Ala. 685, 198 So.2d 261 (1967).
Defense counsel's specific objection that the test results were inadmissible because the consent of the appellant had not been obtained was also insufficient. There was evidence that the appellant had given permission. An accused who objects to evidence is bound by the ground asserted for such objection.Roynica v. State, 54 Ala. App. 436, 309 So.2d 475, cert. denied,293 Ala. 772, 309 So.2d 485, cert. denied, 423 U.S. 858,96 S.Ct. 111, 46 L.Ed.2d 85 (1974); Whiddon v. State, 53 Ala. App. 280, 299 So.2d 326 (1973).
If the objection assigned to evidence was not well taken, the trial court cannot be put in error for admitting the evidence though it was subject to another objection. Harwell v. State,12 Ala. App. 265, 68 So. 500, cert. denied, 192 Ala. 689,68 So. 1019 (1915). A general objection is not sufficient to raise the question of an expert's qualification. Snoddy v. State,20 Ala. App. 168, 101 So. 303 (1924). An objection to the admission in evidence of a municipal ordinance on the grounds that it is not properly certified and not shown to be an ordinance of the town waived the objection that it was not shown that the ordinance had been duly published as the law requires. Kennedyv. Town of Oxford, 22 Ala. App. 77, 112 So. 813, cert. denied,216 Ala. 206, 112 So. 815 (1927). Objection to the admission of an express receipt for a package on the grounds that it was immaterial, incompetent, and irrelevant waived all other grounds and in effect admitted the genuineness of the receipt.Clark v. State, 22 Ala. App. 319, 115 So. 294, cert. denied,217 Ala. 229, 115 So. 295 (1928).
Defense counsel's objection to the admission of the results of the blood test to determine alcohol content on the ground that the appellant's consent had not been obtained waived the objection that a proper predicate had not been shown. Thus the trial court did not commit error in admitting the test results.
On this appeal, the appellant has not only cited as error virtually every objection made in the trial court without regard to whether he received an adverse ruling but has also included matters to which objection was not taken. Regardless, we have reviewed every single assignment of error presented by the appellant and written to most. In our search of the record we have found no error prejudicial to the substantial rights of the accused. Therefore the judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur. *Page 565