Rubert "Pike" Tillis was indicted for trafficking in marijuana in violation of § 20-2-80, Code of Alabama 1975. The jury found him "guilty as charged" and following a sentencing hearing the trial court set punishment at eight years in the penitentiary and fined the appellant $25,000.00.
Bill Shaw testified that he was the Chief Deputy with the Covington County Sheriff's Department. Pursuant to a conversation with a confidential informant he went to the Hideaway Club, located in Opp, Alabama, on December 21, 1983. Upon his arrival at the club, he approached the appellant and informed him that he (Shaw) "had received information from an informant about his having controlled substances illegally." (R. 6). He asked the appellant for permission to search his residence. He read this appellant a permission to search form, allowed the appellant to read over the form, and after the appellant signed the form, Shaw witnessed this, along with two other officers. Shaw stated that, before the appellant gave his consent to the search, he was in no way threatened, coerced, induced or intimidated by the officers, nor was he offered any reward or hope of reward in order to procure consent. Appellant was informed that he had the right to refuse the search of his residence.
Shaw testified that he had known appellant for approximately 10 years and had had conversations with him on many occasions. Shaw was not aware that appellant had a hearing problem and had never seen appellant wearing a hearing aid. He further stated that in the past appellant had responded intelligently to conversation with him, and Shaw was sure appellant understood the consent form on this occasion.
Deputy Shaw, appellant, investigator Jerry Newton, and A.B.I. narcotics agent Randy Mobley went to appellant's residence. Upon entering the home, the appellant went into a bedroom, "slid a bed over and picked up a brown paper bag and opened it." (R. 15). When appellant handed Shaw the paper bag he stated "that's all of it". Appellant was asked if, in fact, that was true, but Shaw did not receive an answer to this question. At this time Shaw turned to a closet in this bedroom and opened it up to find a large burlap sack on the floor. He further stated that he could smell the odor of marijuana in the closet.
Jerry Newton testified that he was employed as an investigator for the Covington County Sheriff's Department. On December 21, 1983, he went to the Hideaway Club with Bill Shaw and other officers. Once inside the club, they located the appellant and Newton read the appellant his Miranda rights. Newton stated that appellant appeared to hear and understand his rights and at no time did appellant indicate that he had a hearing problem. After Newton read appellant his "rights" Deputy Shaw asked appellant for consent to search appellant's home. Shaw then read a consent form to appellant and handed the form to the appellant. Appellant "stood there and looked at it and signed it." (R. 32). Newton also signed the form as a witness and observed Agent Mobley sign the form.
After appellant signed the consent to search form, appellant and the officers proceeded to appellant's residence. Upon reaching appellant's residence they entered the home and Tillis took them into a bedroom and took "some marijuana from under a bed and said this is all I have." (R. 35). At this time the officers began a search of the appellant's home and found marijuana in a number of places. The officers found one marijuana cigarette in the master bedroom. Three bags of marijuana, sixteen marijuana cigarettes, some currency and a .32 caliber H R pistol were found in the kitchen cabinets. Five paper bags of marijuana were found in a burlap sack and one plastic bag of marijuana was found between mattresses located in the first bedroom to which appellant took them. Fifty marijuana cigarettes were found on the dining room table, and two plastic bags of marijuana in the closet of a third bedroom. Newton identified each of the above items and stated that he took *Page 1369 
possession of this evidence at the scene. He subsequently transported these items to the State lab in Enterprise to have them analyzed and he picked them up from the lab on February 8, 1984. The evidence was in his possession from February 8, 1984 until the time of trial.
Joseph Saloom testified that he was employed as a criminalist for the Enterprise Division of the Alabama Department of Forensic Sciences. He analyzed the substances received from Jerry Newton on January 12, 1984, and stated that the exhibits in evidence were the ones turned over to him for analysis. His analysis revealed each exhibit containing plant material was marijuana. The total weight of the marijuana turned over to him for analysis was 5.17 pounds. He turned this evidence back over to Jerry Newton on February 8, 1984.
During cross-examination, Saloom testified that he was aware of medicinal purposes of marijuana. He further stated that he was aware that marijuana could be used to alleviate pain in persons suffering from glaucoma.
The appellant testified that he had a hearing problem and was supposed to wear a hearing aid. He stated that he had glaucoma in both eyes, which condition gives him pain. He further stated that a doctor in Pensacola, Florida, told him he could smoke marijuana to alleviate the pain glaucoma caused him.
The appellant stated that on December 21, 1983, he was at the Hideaway Club. Officers Shaw, Newton and Mobley came into the club and he signed a paper given to him. He stated that he did not object to going to his house with the officers and upon arrival at his home he took some marijuana out of a bedroom and gave it to Deputy Shaw. He stated that this was all the marijuana he had in his home and he kept it for personal use. Appellant denied ownership of any more marijuana found in this home but stated that he lived in the house alone.
Charlie Tillis testified that the appellant was his brother. He stated that he knew the appellant had glaucoma and that he had seen the appellant smoke marijuana. He further testified that the appellant told him he was smoking the marijuana for his glaucoma.
 I
The appellant contends that the trial court erred in overruling his objection to the testimony of Deputy Shaw. He specifically argues that Shaw's testimony was hearsay.
From the record: (R. 4-7).
"Q. And did you go to the Hideaway Club in Opp?
"A. I did.
 "MR. PRESTWOOD: We object to the leading if the court, please. I think he could answer where he went.
"THE COURT: Don't lead him.
"Q. And for what reason did you go to that club?
"MR. PRESTWOOD: Object to the form of that question.
"THE COURT: Overruled.
 "A. I had a recent conversation with a confidential informant.
 "MR. PRESTWOOD: We object. It would be hearsay insofar as this case is concerned.
 "MS. LOGGINS: We're not offering it for the truth of the statement that was made. Simply to establish the reason for probable cause for going to the place of business.
 "THE COURT: Don't go any further than that you were there and don't try to get into what he said.
"Q. All right, sir.
 "A. As result of the conversation, I went to the Hideaway Club.
". . .
 "Q. All right. And did you have a conversation with the defendant there at the Hideaway Club?
"A. I did.
"Q. And what did you say to him?
"MR. PRESTWOOD: We object, if the Court, please.
"THE COURT: Overruled. *Page 1370 
"A. I told him that I had received information —
 "MR. PRESTWOOD: Now we want to interpose another objection because he could quote something that was absolutely false and prejudicial against the defendant, and yet he is being allowed to communicate it to the jury.
 "THE COURT: The question was, what was the conversation with the defendant?
"MS. LOGGINS: Yes, sir.
"THE COURT: I overrule.
 "Q. What did you say to the defendant when you saw him at the club in Opp?
 "A. I advised him that I had received information from an informant that —
 "MR. PRESTWOOD: And we object to this again, Your Honor. It is the cart before the horse. She is interested, I suppose, to find out what the defendant said to this man, not what this man said to the defendant.
"THE COURT: Overruled.
"Q. Go ahead.
 "A. I told him I had received information from an informant about his having controlled substances illegally.
 "MR. PRESTWOOD: We object and move for a mistrial. We made it very clear to the Court our position in the case. He is being allowed to take an unsworn, unidentified witness, transmit it and communicate it to this jury when we objected three times before we reached this point. And now he had gotten the prejudicial matter against the defendant here to the affect that somebody said that he had controlled substances in the house. We submit to the Court that was not the way to do it. That was not necessary.
"THE COURT: Overruled. You may proceed.
"MR. PRESTWOOD: We except.
"Q. Go ahead.
 "A. Okay. I asked the defendant would he give us permission to search his residence.
"Q. And what did the defendant do?
"A. He gave that permission.
The above quoted colloquy clearly indicates that the statement Shaw made to the appellant is not hearsay. This court has stated on numerous occasions that the hearsay rule applies only to a statement offered for the truth of its contents. SeeDent v. State, 423 So.2d 327 (Ala.Crim.App. 1982); Epps v.State, 408 So.2d 562 (Ala.Crim.App. 1981); Crews v. State,375 So.2d 1291 (Ala.Crim.App. 1979). Shaw's testimony concerning what he stated to the appellant was used to explain the reason Shaw sought to search the appellant's residence and his reason for stopping the appellant. It was not offered to prove the truth of Shaw's information. As such, the testimony was properly admitted at trial.
 II
The appellant contends that the trial court erred in admitting into evidence the permission to search form. He specifically argues that such consent given by the appellant could not be voluntary due to the fact that appellant could not read and had a hearing problem.
"The voluntariness of the consent to search is a question of fact for the trial judge which is to be determined from the totality of all the circumstances. Scott v. State,409 So.2d 978 (Ala.Crim.App. 1981); Barclay v. State, 368 So.2d 579
(Ala.Crim.App.), cert. denied, 368 So.2d 581 (Ala. 1979), cert. denied, 444 U.S. 928, 100 S.Ct. 269, 62 L.Ed.2d 185
(1979). The trial court's finding will not be disturbed on appeal unless the appellate court is convinced that the conclusion is palpably contrary to the weight of the evidence.Weatherford v. State, 369 So.2d 863 (Ala.Crim.App.), cert. denied, 369 So.2d 873 (Ala. 1979), cert. denied, 444 U.S. 867,100 S.Ct. 141, 62 L.Ed.2d 91 (1979)." Coots v. State,434 So.2d 864, 867 (Ala.Crim.App. 1983).
The record indicates that the appellant was aware and understood what the officers were talking to him about. The testimony reveals that the officers read the *Page 1371 
appellant his Miranda rights, the officers read the appellant the consent to search form, and the appellant assisted Deputy Shaw in completing the information required on the form. The appellant was not forced into signing the consent form and never indicated that he could not hear or understand what was read to him. He responded positively to questions asked of him by the officers and took the officers to his home and revealed the presence of marijuana in his bedroom. From a careful review of the record we find that the trial judge was justified in concluding that the appellant freely and voluntarily consented to the search.
 III
The appellant argues that the trial court erred in allowing the State's rebuttal witness to testify that he had taken a "handful of marijuana cigarettes" from him.
During cross-examination of the appellant by the prosecutor the following took place: (R. 78-79).
 "Q. Did you have any other marijuana for your personal use other than what was in that bag? Is that all that you had?
"A. I had one cigarette I had been smoking.
"Q. Where was that?
"A. Ma'am?
"Q. Where was that cigarette?
"A. Laying in the kitchen.
"Q. Did you have any on your person?
"A. No, ma'am.
 "Q. Had you ever had any on your person on December 21, 1983?
"A. No, ma'am.
 "Q. Never had any cigarettes in your possession prior to that except this?
"A. No, ma'am."
The State called Richard Mobley as a rebuttal witness at the conclusion of defense testimony. Mobley testified that he went to the Hideaway Club with Deputy Shaw and Deputy Newton on December 21, 1983. He further stated that prior to going to appellant's residence he took a handful of marijuana cigarettes away from appellant as appellant was trying to put these cigarettes in a pool table. (R. 88-89).
"The admission of rebuttal evidence is within the discretion of the trial judge. Crow v. State, 365 So.2d 1254
(Ala.Crim.App. 1978), cert. denied, 365 So.2d 1256 (Ala. 1979)."Norris v. State, 429 So.2d 649, 650 (Ala.Crim.App. 1982);Sprinkle v. State, 368 So.2d 554 (Ala.Crim.App. 1978), writ quashed, 368 So.2d 565 (Ala. 1979). Further, "`[t]he State may, in the discretion of the trial court, introduce in rebuttal any competent evidence which explains or is a direct reply to or a contradiction of material evidence by the defendant.' Sprinklev. State, 368 So.2d 554 (Ala.Cr.App. 1978), writ quashed,368 So.2d 565 (Ala. 1979)." Norris v. State, supra at 650. Mobley's testimony contradicted appellant's express denial of the possession of any more marijuana than he showed the officers in his home. We find no abuse of discretion in allowing this testimony.
A careful review of the record reveals no errors injurious to appellant. Therefore, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.