Bennie Strong was charged in three separate indictments with the unlawful sale of cocaine. Following a jury trial, the appellant was found guilty of all three offenses. The trial court sentenced the appellant to ten years' imprisonment for each offense with the sentences to run concurrently.
Rufus Foxx testified he was an undercover narcotics officer with the Madison County Alabama Sheriff's Department during 1987. His job required him to go to certain areas where drugs were known to be sold and observe the people who were selling the drugs. On one occasion, Foxx saw an individual named Alice Drake, from whom he had purchased drugs in the past. Drake told Foxx that she did not have any drugs and she took him to the appellant, Strong. Foxx observed Drake buy cocaine from the appellant with money that Foxx had supplied.
On June 30, 1987, Foxx was driving through the Binford Court area in Madison County, Alabama. He saw the appellant leaning against a fence in front of some apartments. Foxx stopped his vehicle and motioned the appellant over to his car. Foxx asked the appellant for a "twenty cent piece" (i.e., $20 worth of cocaine). The appellant reached in his pocket, pulled out a Bandaid can and removed one of several small, white packets inside and gave it to Foxx. Foxx paid him for the packet.
On July 24, 1987, Foxx was again driving through the Binford Court area when an *Page 816 
individual named Jimmy Drake got into his car. Drake told Foxx he knew where Foxx could get some cocaine. Foxx replied that he had seen the appellant and he wanted to buy from him because he had done business with him in the past. Drake replied that he knew the appellant and he could get Foxx a better deal. Foxx then went to the area where the appellant was located. Drake got out of the car and went over and talked to the appellant. The appellant then went into some apartments and came back outside. Drake then obtained $50 from Foxx and gave it to the appellant. The appellant went back into an apartment. A few minutes later, the appellant returned and gave Drake a small white packet. The appellant then walked over to Foxx's car and gave Foxx a white packet.
On September 15, 1987, Foxx saw the appellant leaning against a car in the street as Foxx was driving through Binford Court. The appellant stepped into the street and stopped Foxx's car. The appellant told Foxx that he had some of the best cocaine to ever come out of Binford Court and that he had sold $1,400 worth of cocaine that day. He asked Foxx if he wanted to buy some and Foxx gave him $25. The appellant then took out his Bandaid can and gave Foxx a white packet. The appellant then pointed to a black pickup truck and told Foxx that, whenever he saw that truck, the appellant was selling cocaine in the area. The substance inside the white packets, which were sold to Foxx by the appellant, was determined to be cocaine by the Department of Forensic Sciences.
Joe Wheeler, a deputy sheriff with the Madison County Sheriff's Department, testified that he supervised Foxx as an undercover narcotics officer. On the night of June 30, 1987, Foxx told Wheeler that he had purchased cocaine from the appellant. Foxx asked Wheeler to obtain a picture of the appellant so he could identify him. Wheeler obtained a picture of the appellant and two similar looking males and showed them to Foxx. Foxx picked out the appellant's photograph without hesitation.
Jimmy Drake testified for the defense. Drake stated that he had been convicted for the possession and sale of cocaine to Foxx. He stated that he was not with Foxx on the night of July 24, 1987, and that he never bought drugs from the appellant for Foxx. Drake testified that the appellant was not in the Binford Court area very often and, when he was, he was at the gambling house.
In rebuttal, Randy Christensen testified that he was a police officer with the City of Huntsville on August 22, 1987. That day, Christensen saw the appellant driving a black Ford pickup truck out of the Binford Court area. Christensen attempted to stop the appellant. At some point, the appellant threw a Bandaid can out of the window.
 I
Prior to trial, defense counsel made a motion to discharge the jury on the basis that the prosecutor had used his peremptory strikes to systematically exclude blacks from the jury, in violation of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The prosecutor used his peremptory strikes to remove five of the six black prospective jurors from the venire.
Following the motion to discharge the jury, the prosecutor offered his reasons for striking these jurors. The prosecutor stated that he struck juror # 37 because he had been prosecuted on drug charges by the District Attorney's Office and because he knew defense counsel. Juror # 36 was struck because he was unemployed and he knew defense counsel. Juror # 27 was removed because he knew defense counsel. Juror # 29 was struck because he had been prosecuted by the District Attorney's Office for non-support and because he knew defense counsel. Juror # 34 was removed because he was very attentive to defense counsel during voir dire but he paid little attention to the prosecutor during voir dire. The prosecutor thought he remembered Juror # 34 said he knew defense counsel. Following the prosecutor's explanations, the trial judge overruled the motion to discharge the jury.
The appellant contends on appeal that his motion was improperly denied because the *Page 817 
prosecutor failed to offer race-neutral reasons for the use of his peremptory challenges to exclude these jurors.
All of the reasons given by the prosecutor have been found to be race-neutral. See United States v. Cartlidge, 808 F.2d 1064
(5th Cir. 1987)[1] (court found the prosecutor's reasons that a juror knew defense counsel, a juror avoided eye contact with the prosecutor during voir dire and juror was unemployed were race-neutral); Ex parte Scales, 539 So.2d 1074 (Ala. 1988) (court found that prosecutor's explanation that a juror had a prior arrest record and involvement with the law were race-neutral reasons); Levert v. State, 512 So.2d 790
(Ala.Cr.App. 1987) (inattentiveness of juror was race-neutral reason).
Furthermore, the Alabama Supreme Court recently held that,
 "In Batson the Supreme Court did not eliminate peremptory strikes altogether. It simply said that such strikes must not be used to discriminate on a racial basis. We appreciate that it is impossible to know what is in the mind of another person, and that it is possible that, in stating his reasons for striking a black member of the venire, a prosecutor may give a reason that is not the true reason, but we are convinced that the trial judges in our system are in a much better position than appellate judges to decide whether the truth has been stated."
Scales.
The reasons given by the prosecutor in this case were racially neutral and the trial court obviously believed the prosecutor's explanations. The guidelines set out inBatson were followed in this case. Thus, we find no abuse of the trial judge's discretion by denying the motion to discharge the jury.
 II
At the beginning of Christensen's testimony on rebuttal, defense counsel objected on the grounds that Christensen's testimony had to be limited to matters previously brought out in the trial. The trial court replied, "We can't tell what's rebuttal until we hear it." (R. 172.) During the middle of Christensen's testimony and at the end of his testimony, defense counsel asked for a mistrial. He alleged that Christensen's testimony was not rebuttal evidence and it should have been introduced during the State's case-in-chief. He stated that the State's sole reason for Christensen's testimony was to prejudice the jury. The trial judge denied the motion for a mistrial and the appellant contends on appeal that this denial constitutes reversible error. We disagree.
 " 'The admission of rebuttal evidence is within the discretion of the trial judge. Crow v. State, 365 So.2d 1254 (Ala.Cr.App. 1978), cert. denied, 365 So.2d 1256 (Ala. 1979).' Norris v. State, 429 So.2d 649, 650 (Ala.Cr.App. 1982); Sprinkle v. State, 368 So.2d 554 (Ala.Cr.App. 1978), writ quashed, 368 So.2d 565 (Ala. 1979). Further, ' "[t]he State may, in the discretion of the trial court, introduce in rebuttal any competent evidence which explains or is a direct reply to or a contradiction of material evidence by the defendant." Sprinkle v. State, 368 So.2d 554
(Ala.Cr.App. 1978), writ quashed, 368 So.2d 565
(Ala. 1979).' Norris v. State, supra at 650."
Tillis v. State, 469 So.2d 1367, 1371 (Ala.Cr.App.), cert. denied, 469 So.2d 1367 (Ala. 1985).
Throughout the trial, defense counsel sought to discredit Foxx's identification of the appellant as the person who sold him drugs on these three occasions. Furthermore, Drake testified for the defense that he did not purchase drugs from the appellant for Foxx and that the appellant was not in the Binford Court area very often. Christensen testified that he saw the appellant coming out of Binford Court driving a black pickup truck on August 22, 1987. This testimony was in rebuttal to Drake's assertions in his testimony that the appellant *Page 818 
was in the Binford Court area infrequently.
Christensen also testified that the appellant threw a Bandaid can out of his truck window on this occasion. Foxx had testified that the appellant had a Bandaid can in his possession on two of the occasions when the appellant allegedly sold Foxx cocaine. Christensen's testimony on this matter was in rebuttal to defense counsel's implications during theentire trial that Foxx had misidentified the appellant.
Moreover, even if Christensen's testimony should have been offered during the State's case, "[i]t is within the discretion of the trial court to receive, in rebuttal, testimony which more properly should have been offered as part of the case in chief." Ford v. State, 383 So.2d 601, 604 (Ala.Cr.App. 1980) (citations omitted). See also Ala. Code, § 15-14-4 (1975). We do not find that the trial judge abused his discretion by allowing Christensen to testify on rebuttal.
For the reasons stated above, this cause is due to be, and is hereby, affirmed.
AFFIRMED.
TAYLOR, P.J., and McMILLAN, J., concur.
BOWEN and PATTERSON, JJ., concur in result only.
[1] This case was tried just before Batson was decided. However, the Fifth Circuit on appeal applied Batson to this case on the assumption that it was applicable. *Page 819 
[EDITORS' NOTE: PAGES 819 CONTAINS DECISIONS WITHOUT OPINIONS.] *Page 1209