ON RETURN TO REMAND
The appellant, Timothy John Yelder, was convicted of rape in the first degree and burglary in the first degree. On the authority of Ex parte Yelder, 575 So.2d 137 (Ala. 1991), we remanded this case to the Circuit Court for Montgomery County so that that court could hold a hearing on the appellant'sBatson[1] claim. 596 So.2d 595. The circuit court held a Batson
hearing and filed with this court its findings as to the reasons given by the prosecution for its peremptory strikes of black veniremembers. The prosecution gave the following reasons, as quoted from the court's findings:
 "Venireman Number 99 — She was a coworker with the victim and knew the defense attorney in the case. She also stated that 'she would be questionable in her mind.' *Page 597 
 "Venireman Number 58 — She signed an anti-police petition in Todd Road Incident.* Furthermore, she stated that it was good that Yelder was out on bond.**
 "Venireman Number 115 — She was confused as to the events preceding the case. She had been previously prosecuted by District Attorney's Office on a worthless check charge and she was another Todd Road petitioner.
 "Venireman Number 1 — He recalled the bond issue in detail from pretrial publicity yet would not state a position on it. He also knew defense attorney's brother and was a Todd Road petitioner.
 "Venireman Number 30 — She was acquainted with Mr. Hardwick and his wife who was also present during jury selection. She had difficulty in understanding the Court's questions.
 "Venireman Number 103 — She appeared deceptive in some of her responses. She would not elaborate on any voir dire questioning despite having claimed to be familiar with the case.
 "Venireman Number 57 — Stated that 'everybody should be released on bond before trial.' This position was not that of the State and had not been in pre-trial matters.
 "Venireman Number 101 — She did not appear believable in response to voir dire. Her responses were limited to 'I just don't know,' 'I would not know,' and 'Sure enough.' Also, her brother had been charged with burglary.
 "Venireman Number 32 — He made evasive responses to voir dire. He was not forthright despite having some knowledge of the case. The Court could not elicit responses from him.
 "Venireman Number 148 — She stated 'Everyone should be free until proven guilty.' She appeared confused. Also she was a classmate of Mr. Hardwick, the defense attorney.
 "Venireman Number 66 — She was either confused or trying to mislead the Court about the bond issue as she gave two different answers to questions. She stated first that she knew nothing about it, then that 'people in East Montgomery were upset about it.'
 "Venireman Number 157 — She is the wife of City Judge, . . . who had previously worked with Mr. Hardwick.
 "Venireman Number 120 — He is an older man that had heard nothing about the case. Also, an employee of the District Attorney's Office lived across the street and said that he would make a poor juror.
 "Venireman Number 91 — She said that it 'depressed' her on the bond issue and that more rapes may have been committed while he (Yelder) was out on bond. She had a 'we-they attitude' as evidenced by her response to questioning beginning with 'they said.' The Court could not elicit any specific knowledge of the case from her.
 "Venireman Number 110 — Before the Court asked any questions, the Juror's response was 'I just heard this lady had got raped and it was a young black male that did it.' She said that she had heard a racial comment about the case; however, she would offer no opinion about anything despite the court's questioning.
 "Venireman Number 71 — Failed to answer the Court — Appeared not to understand the Court's questions. She acted as if the Court was just leading her along.
 "Venireman Number 52 — She did not answer the Court's questions. She was indecisive and failed to respond to probing questions.
 "Venireman Number 65 — This Correctional Officer did not understand the bond issue surrounding this case which was surprising considering his work.
The striking of a prospective juror because he has prior convictions is a valid race-neutral reason. Yelder v. State, *Page 598 
[3 Div. 212, October 11, 1991], 1991 WL 238088 (Ala.Cr.App. 1991); Jackson v. State, 549 So.2d 616
(Ala.Cr.App. 1989). "The fact that a veniremember is evasive or ambiguous in answering questions on voir dire is certainly a valid reason for striking that member from the venire."Mitchell v. State, 579 So.2d 45, 49 (Ala.Cr.App. 1991). "The fact that a veniremember knew one of the lawyers involved in the case is a valid race-neutral reason for striking that juror." Yelder, 1991 WL 238088, *8; Strong v. State,538 So.2d 815 (Ala.Cr.App. 1988). The fact that a family member of the prospective juror has been prosecuted for a crime is a valid race-neutral reason. Powell v. State, 548 So.2d 590
(Ala.Cr.App. 1988), aff'd, 548 So.2d 605 (Ala. 1989). The fact that a juror knew the victim is a valid race-neutral reason.Thomas v. State, 520 So.2d 223 (Ala.Cr.App. 1987). The reasons given for striking those jurors who had signed the Todd Street petition were valid reasons that were related to the case. SeeWilliams v. State, 548 So.2d 501 (Ala.Cr.App. 1988), cert. denied, 489 U.S. 1028, 109 S.Ct. 1159, 103 L.Ed.2d 218 (1989).
 As this court stated in Yelder, supra: "We cannot say after a careful review of the record that there is any evidence of 'disparate treatment' in the striking of black members of the venire and the striking of the white members of the venire. Sims [v. State, [Ms. 89-342, June 14, 1991] 587 So.2d 1271, 1278 (Ala.Cr.App. 1991)]."
Yelder, 1991 WL 238088, *8. White jurors were struck for the same reasons as those given for striking black jurors.
The ruling of the trial court was not "clearly erroneous."Yelder, supra; Gaston v. State, 581 So.2d 548
(Ala.Cr.App. 1991). The trial court acted correctly in finding no Batson violation.
For the foregoing reasons, the judgment in this case is due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986).
* "The Todd Road incident involved a dispute between the Montgomery Police Department and a group of black citizens. Miss Brooks, the attorney for the State, was the prosecutor in the case and Mr. Hardwick was the Defense Attorney in that case.
** "The bond issue in Yelder received substantial pretrial publicity due to the low bond posted by Yelder as set by the District Court."