The appellant, Tyrone Kelley, was convicted of rape in the first degree, a violation of § 13A-6-61, Code of Alabama 1975. He was sentenced to 25 years' imprisonment.
The appellant presents four issues on appeal.
 I
The appellant initially contends that the guilty verdict was contrary to the great weight of the evidence. He also contends that the state failed to establish a prima facie case, arguing that there was no showing of forcible compulsion. Section13A-6-61(a)(1), Code of Alabama 1975, provides: "A male commits the crime of rape in the first degree if . . . [h]e engages in sexual intercourse with a female by forcible compulsion. . . ."
The state's evidence tended to show that, on the evening of December 16, 1990, the victim was driving on County Road 11 in Shelby County. In order to avoid an oncoming car, she swerved off of the road and drove down an embankment. She got out of the car and climbed up to the road, where she signalled a car, driven by the appellant, for assistance. When the appellant stopped, the victim asked him to telephone a friend for her. After he agreed to do so, the victim returned to her car to retrieve her purse so that she could write down her friend's telephone number.
When the victim got out of her car, she turned around and discovered that the appellant had followed her down the embankment. When she tried to return to the road, the appellant grabbed her from behind and forced her to the ground, face down. The appellant then climbed on top of her, turned her over, and pinned her down with his left arm, placing his left hand around her throat. The appellant told the victim, who was screaming and struggling, to "shut up or he would kill" her (R. 28). He then unbuttoned her pants, undid her zipper, and pulled her pants down with his right hand, telling her to "shut up and take it" (R. 30). The appellant then unzipped his own pants and had intercourse with her. Afterwards, the appellant picked her up, kissed her, threw her back to the ground, and walked away. *Page 475 
After the appellant left her, the victim began to cry and to scream for help. Minutes later, a driver passing by saw her car and stopped to offer assistance. After being helped back to the road, the victim saw the appellant, who whispered to her to not "tell anyone or I'll kill all of you" and "to zip [her] pants up" (R. 34).
Deputy Russell Yawn with the Shelby County Sheriff's Department arrived at the scene in response to a call regarding the accident. After the victim told him that she had been raped by the appellant, Yawn arrested the appellant at the scene.
The victim was taken to the Shelby Medical Center by a friend who had been called to the scene. The nurse who examined the victim stated that she had scratches and bruises on her lower back, bruises on her neck, and white stains on her buttocks. She also testified that the victim was emotionally upset. Although she did not know whether the victim had been raped, the nurse could testify that the victim had engaged in intercourse.
The appellant disputes the evidence. The appellant contends that the victim's testimony was contradicted on several occasions by her own testimony at the preliminary hearing, by the testimony of the man who came to her aid after the alleged rape, by the testimony of Deputy Yawn, and by the testimony of the nurse who examined the victim at the Shelby Medical Center. The appellant also argues that the victim's testimony contradicted a statement that he made to Yawn at the scene alleging that the victim consented. Of course, the testimony of witnesses to an event will vary; such variation is evidence that the testimony was unrehearsed.
Further, the appellant contends that the victim did not tell anyone at the scene that she had been raped until the police began to suspect her of driving under the influence. This fact does little to weaken the the victim's testimony considering his alleged threat to kill the victim. The appellant also argues that it was impossible for him to have held the victim down with one arm and to have removed her pants and unzipped his pants with the other. We find that that act is well within the range of possibility. Additionally, the appellant contends that no one noticed the bruises on the victim's neck (allegedly from the appellant's fingers) until after her friend had taken her to the medical center approximately two to three hours after the alleged rape.
The appellant also argues that the nurse who examined the victim at the medical center had no basis for her testimony that the victim could have been raped. Finally, the appellant elicited the testimony of various persons attesting to the victim's reputation for untruthfulness and to the appellant's good character.
All of these contentions advanced by the appellant presented questions for the jury, go to the weight of the evidence, and will not support a reversal. The "weight of the evidence" refers to "'a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.'" Johnson v. State,555 So.2d 818, 820 (Ala.Cr.App. 1989) (quoting Tibbs v.Florida, 457 U.S. 31, 37-38, 102 S.Ct. 2211, 2216,72 L.Ed.2d 652 (1982)). "[I]t is not the province of this court to reweigh the evidence presented at trial." Watkins v.State, 565 So.2d 1227, 1231 (Ala.Cr.App. 1991). Conflicting evidence is a matter for the jury's consideration.Smith v. State, 583 So.2d 990 (Ala.Cr.App.), cert. denied, 583 So.2d 993 (Ala. 1991); Johnson, supra.
Based on the facts as set out above, the jury's verdict "was [not] palpably contrary to the great weight of the evidence and manifestly wrong." Watkins, 565 So.2d at 1231.
Further, after reviewing the facts of this case, we hold that there was sufficient evidence to submit the question of "forcible compulsion" to the jury. See, e.g., Ayers v.State, 594 So.2d 719 (Ala.Cr.App. 1991); Parks v.State, 565 So.2d 1265 (Ala.Cr.App. 1990); Smith v.State, 545 So.2d 198 (Ala.Cr.App. 1989).
Thus, the circuit court did not err. *Page 476 
 II
The appellant also contends that the circuit court denied him a fair trial by denying his motion under Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986), he argues that the state used peremptory strikes in a racially discriminatory fashion and thereby violated his equal protection rights.
In Batson, the Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."476 U.S. at 89, 106 S.Ct. at 1719. See also Ex parte Branch,526 So.2d 609 (Ala. 1987). When a defendant makes a timelyBatson motion and establishes a prima facie case of discrimination, the state must produce a race-neutral explanation for each strike of a minority veniremember. See, e.g., Avery v. State, 545 So.2d 123 (Ala.Cr.App. 1988). The court's ruling on the Batson motion will be reversed only if it is clearly erroneous. Jackson v.State, 549 So.2d 616 (Ala.Cr.App. 1989).
The appellant in this case is a black male charged with raping a white woman. The record reveals that the state used three of its peremptory strikes to remove blacks from the venire, leaving one black woman to sit on the jury. After the state justified each of the strikes, the circuit court denied the appellant's Batson motion.
The prosecution cited the following reasons in support of its strikes of black veniremembers:
 Juror number 65: Was single and worked "at EBSCO where two of the State's witnesses work. K.G. [who was called by the defense] works there and P.W. also works there. . . ." (R. 15.)
 Juror number 77: Had a criminal history, was single, and acted like he was asleep.
 Juror number 102: Had a conviction for driving under the influence, indicated that he might be related to the defendant, and stated that he might have some difficulty with the case.
Further, the prosecution removed all veniremembers, regardless of race, who stated that they were single.
Striking a minority veniremember who has prior convictions, including one for driving under the influence, is a race-neutral reason. See, e.g., Yelder v. State, [Ms. 3 Div. 212, Oct. 11, 1991], 1991 WL 238088 (Ala.Cr.App. 1991);Cowan v. State, 579 So.2d 13 (Ala.Cr.App. 1990);Leonard v. State, 551 So.2d 1143 (Ala.Cr.App. 1989). The fact that a veniremember appears to be asleep or inattentive is also a valid race-neutral reason for exercising a peremptory strike. See, e.g., Mitchell v. State,579 So.2d 45 (Ala.Cr.App. 1991), cert. denied, 596 So.2d 954 (Ala. 1992); Strong v. State, 538 So.2d 815 (Ala.Cr.App. 1988); Smith v. State, 531 So.2d 1245 (Ala.Cr.App. 1987). Further, the fact that a veniremember is single may be a race-neutral reason for striking a prospective juror if that reason is related to the facts of the case. Under the facts of the present case being single was a valid reason for striking the prospective juror, especially when the state has "struck non-black jurors for substantially the same reason. Such evidence of neutrality may overcome the presumption of discrimination." Bedford v. State, 548 So.2d 1097,1098 (Ala.Cr.App. 1989). See also Harris v. State,545 So.2d 146 (Ala.Cr.App. 1988); Mathews v. State,534 So.2d 1129 (Ala.Cr.App. 1988); Pritchett v. State,548 So.2d 509 (Ala.Cr.App. 1988); Avery v. State,545 So.2d 123 (Ala.Cr.App. 1988). A veniremember's indication that the member might have problems being on the jury in the case is also a race-neutral reason for removing that person from the venire. See, e.g., Yelder, supra.
We conclude that the reasons given by the prosecution were race neutral. Thus, the circuit court did not err in denying the appellant's Batson motion.
 III
The appellant further contends that the state violated his due process rights by misleading both him and the circuit court when it failed to timely disclose the past *Page 477 
arrest and conviction records of various prospective jurors.
On June 24, 1991, the appellant filed a "Motion for Discovery of All Voting Records and Other Information Concerning Potential Jurors," requesting all "data or [sic] prospective jurors, including but not limited to prior voting records,arrest and conviction records, and other background information" (C. 34) (emphasis added). The trial did not begin until September 17. The court denied the motion on July 26, stating that the motion was "moot as the state does not have access to such records" (C. 34).
At trial, the state used peremptory strikes to remove two potential jurors from the venire based on previous convictions. On voir dire, however, the state never inquired as to whether any veniremember had any prior convictions.
The appellant contends that the state must have had access to the conviction records of the potential jurors to have been able to strike them on that ground. He argues that those records were favorable material evidence and that the state violated Brady v. Maryland, 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when it failed to produce those records. Further, the appellant argues that, under Rule 16.1(c), Ala.R.Crim.P., the state was compelled to produce those records because they were material to the preparation of his defense and that Rule 16.3, Ala.R.Crim.P., placed a continuing duty on the state to furnish such discovery when it became available.
Rule 16.1(c) provides, in pertinent part:
 "Upon written request of the defendant, the prosecutor shall . . . , upon motion, for good cause shown, permit the defendant to analyze, inspect, and copy . . . documents . . . which are within the possession, custody, or control of the state/municipality and . . . [w]hich are material to the preparation of the defendant's defense. . . ."
(Emphasis added. "We have implemented the mandate ofBrady in Rule [16.1 Ala.R.Crim.P.]." Ex parteBrown, 548 So.2d 993, 994 (Ala. 1989). See also Commentary to Rule 16, Ala.R.Crim.P.; C. Gamble, McElroy's AlabamaEvidence § 290.05(1) (4th ed. 1991). Even though the wording of the rule suggests a more liberal application ofBrady, the commentary to Rule 16.1 points out that the phrasing of the rule serves only to aid the defendant in specifying what exculpatory evidence it seeks with its discovery motion.
This court has held that arrest and conviction records of potential jurors do not qualify as the type of discoverable evidence that falls within the scope of Brady and that a trial court will not be held in error for denying an appellant's motion to discover such documents. Slinker v.State, 344 So.2d 1264 (Ala.Cr.App. 1977). Cf., Cliftonv. State, 545 So.2d 173 (Ala.Cr.App. 1988) (the nondisclosed evidence was not exculpatory, thus Brady
was inapplicable). In other words, the appellant does not have an absolute right to the disclosure of the arrest and conviction records of prospective jurors. See Slinker, supra. Cf., Davis v. State, 554 So.2d 1094
(Ala.Cr.App. 1984), aff'd, 554 So.2d 1111 (Ala. 1989), rehearing overruled, 569 So.2d 738 (Ala. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1091, 112 L.Ed.2d 1196 (1991) (defendant is not entitled to the general disclosure of the criminal records of the state's witnesses); Wright v.State, 424 So.2d 684 (Ala.Cr.App. 1983) (no absolute right to disclosure of criminal records of state's witnesses).
Several jurisdictions have similarly held. See, e.g.,People v. Murtishaw, 29 Cal.3d 733, 175 Cal.Rptr. 738,631 P.2d 446 (1981), cert. denied, 455 U.S. 922,102 S.Ct. 1280, 71 L.Ed.2d 464 (1982) (trial judge has discretionary authority to permit defense access to jury records); Moonv. State, 258 Ga. 748, 375 S.E.2d 442 (1988), cert. denied, ___ U.S. ___, 111 S.Ct. 1638, 113 L.Ed.2d 733 (1991) (trial court did not err in denying defendant's motion for pretrial discovery of state's juror information records);State v. Wiggins, 556 So.2d 622 (La.App. 1990) (defendant is not necessarily entitled to "rap sheets" of prospective jurors); State v. Weiland, 540 So.2d 1288
(La.App. 1989) (defendant is not entitled to rap sheets of prospective jurors because those records are useful to state in its *Page 478 
desire to challenge jurors with inclinations or biases against state, but are not pertinent to purpose of defendant's voir dire: to challenge jurors who defendant believes will not approach the verdict in a detached and objective manner);State v. Childs, 299 S.C. 471, 385 S.E.2d 839 (1989) (no right to discovery of criminal records of potential jurors absent statute or courtrules requiring such disclosure); Jeffrey F. Ghent, Annot., Right of Defense in CriminalProsecution to Disclosure of Prosecution Information RegardingProspective Jurors, 86 A.L.R.3d 571, § 4(a) (1978), and the cases cited therein.
Also, the state has no duty to disclose information that is available to the appellant from another source. Hurst v.State, 469 So.2d 720 (Ala.Cr.App. 1985). Here, the appellant could have procured this information from the veniremembers themselves during voir dire. See alsoClifton, supra (nondisclosure did not prejudice appellant's defense).
The fact that the state gained access to those records once the list of the names of the veniremembers was released does not obligate disclosure. Because this information was not discoverable under Rule 16.1, without an order from the court, the state had no continuing duty under Rule 16.3 to supply this information to the appellant.
Thus, we find no error in the circuit court's denial of the appellant's motion to produce various records pertaining to the prospective jurors. Because the state could not produce the records of veniremembers whose names it did not yet know, there is no evidence that the state intentionally misled the circuit court and the appellant in regard to its possession of such records at the time of the motion. Because the state fully complied with all discovery orders issued by the court, we find no error. IV
The appellant also contends that the prosecution was guilty of misconduct in various statements it made during closing arguments.
Initially, the appellant argues that the state made an impermissible comment regarding his failure to testify. The following occurred during the state's closing argument:
 "[PROSECUTING ATTORNEY]: You see the police report. What about the police report? You saw [appellant's counsel] waving it around, shoving it under [various state witnesses's] faces, you didn't get to see what was in here he said himself. He said this in his closing arguments, you know, and that is why you don't have it. You got the shirt and the blue jeans. You got these shoes in the bag. What is the whole story
—"
 "[APPELLANT'S COUNSEL]: Object. Improper argument."
(R. 421) (emphasis added).
The appellant stated no grounds for his objection other than that the prosecutor's statement was an "[i]mproper argument." A general objection preserves nothing for review. Thompsonv. State, 575 So.2d 1238 (Ala.Cr.App. 1991).
Further, even if the appellant's objection had been correctly preserved, the appellant's argument would fail on the merits because the prosecutor's comment refers to a police report that contained notes regarding the appellant's statement at the scene. Even though the police report was not received into evidence, the officer who filled it out testified as to what the appellant said. Thus, the prosecutor's comment refers to what the appellant "did say rather than what he did not say."Brinks v. State, 500 So.2d 1311, 1315 (Ala.Cr.App. 1986). See also Kimble v. State, 545 So.2d 228
(Ala.Cr.App. 1989). Also, the prosecutor's comment was in no way a direct reference to the appellant's failure to testify.Hardy v. State, 462 So.2d 1016 (Ala.Cr.App. 1984).
The appellant also contends that the state made three other remarks during closing arguments that amounted to reversible error. In response to each of the appellant's objections at trial, however, the court promptly instructed the jury to disregard *Page 479 
the state's remarks and to base its judgment solely on the evidence that had been presented to it. "When the trial court immediately instructs the jury to disregard any improper remarks, there is a prima facie presumption against error."Singleton v. State, 553 So.2d 689, 690 (Ala.Cr.App. 1989); Bedford, supra.
After reviewing the state's comments during closing arguments and the circuit judge's response to each, we find no prejudice.
 V
Finally, the appellant argues that the circuit court erred when it refused to receive into evidence testimony indicating that the victim was sexually dissatisfied with her live-in fiance at the time of the rape. He argues that the testimony serves to establish the victim's state of mind and to buttress his defense of consent, rather than to show her past sexual behavior.
The circuit court held that such testimony was barred by the "rape shield" statute, which provides, in pertinent part, that "[i]n any prosecution for criminal sexual conduct . . ., evidence relating to the past sexual behavior of the complaining witness . . . shall not be admissible. . . ." Section 12-21-203(b), Code of Alabama 1975. We agree.
Evidence relating to the victim's sexual relationshipswith third persons is immaterial and irrelevant and violates the protections of the Alabama "rape shield" statute.Lewis v. State, 549 So.2d 620 (Ala.Cr.App. 1989);Smiley v. State, 435 So.2d 202 (Ala.Cr.App. 1983). See also § 12-21-203(b), Code of Alabama 1975;McElroy's, § 32.01, § 45.11(6).
The circuit court did not err in excluding the testimony regarding the victim's dissatisfaction with her fiancé.
The judgment in this case is affirmed.
AFFIRMED.
All the Judges concur.