639 So.2d 515 (1993)
Ricky Dale ADKINS
v.
STATE.
7 Div. 146.
Court of Criminal Appeals of Alabama.
March 5, 1993.
As Corrected on Denial of Rehearing May 28, 1993.
*517 D. Michael Barrett, Birmingham, Talmadge H. Fambrough, Pell City, and Charlotta Norby, Atlanta, GA, for petitioner.
Don Siegelman, Atty. Gen., and James H. Evans, Atty. Gen., and Gilda Branch Williams and William D. Little, Asst. Attys. Gen., for respondent.

ON RETURN TO REMAND
TAYLOR, Judge.
The appellant, Ricky Dale Adkins, was convicted of three counts of murder, made capital because the murder occurred during the course of a rape, a robbery, and a kidnapping. Sections 13A-5-40(a)(1), (a)(2), and (a)(3), Code of Alabama 1975. He was sentenced to death by electrocution.
We affirmed the appellant's conviction in Adkins v. State, 600 So.2d 1054 (Ala.Cr.App. 1990). Between the time of our affirmance and the Alabama Supreme Court's decision in this case, Ex parte Adkins, 600 So.2d 1067 (Ala.1992), the United States Supreme Court in Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), expanded the holding of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to white defendants. The appellant in this case is a white male; following Powers, the Alabama Supreme Court remanded this case so that a Batson hearing could be held. We then remanded this cause to the Circuit Court for St. Clair County. Adkins v. State, 600 So.2d 1072 (Ala.Cr.App.1992). That court held a Batson hearing and has filed its findings with this court.
The trial court's findings show that the state struck 9 of the 11 black prospective jurors on the venire. One black ultimately sat on the jury. The court found that a prima facie showing of discrimination had been made and it held a hearing at which the prosecutor gave the following reasons for striking the 9 black prospective jurors:
Prospective juror number 59This juror was struck because he came forward and asked that he be excused from serving on the jury. He was 61 years old and had ulcers.
Prospective juror number 39This juror was struck because he answered during the voir dire that he knew about the case and because he was also single.

Prospective juror number 8This juror was struck because she stated that she knew about the case. The prosecutor also had information that she was married to or lived with an individual he had prosecuted.
Prospective juror number 52This juror was struck because of his age and because he was single. He also appeared inattentive and seemed disinterested during voir dire.
Prospective juror number 36This juror was struck because she was 53 and single. She was also unemployed and asked to be excused from serving on the jury because she had high blood pressure.
Prospective juror number 31This juror was struck because she was single and because she was known to associate with a former local chief of police who had been forced to resign.
Prospective juror number 56This juror was struck because he was 86 years old and because he indicated that he knew defense counsel.
Prospective juror number 14This juror was struck because she was single and because she worked for the Department of Human Resources (DHR) and the district attorney's office had frequent dealings with her in her capacity as a DHR employee.
Prospective juror number 60This juror was struck because her father had a federal conviction for a drug-related crime.
After a careful review of the reasons given by the prosecutor and after examining the testimony taken at the Batson hearing, we find that no Batson violation occurred here.
*518 Initially we observe that the St. Clair County District Attorney's office does not have a history of discriminatory striking. The primary reason given for striking 5 of the 9 black prospective jurors was because the jurors were single. As the court stated in its findings:
"The District Attorney stated that it was their goal in jury selection to have jurors who were married. The primary defense of the defendant to the capital murder charges was that the defendant did not rape the victim.... It was the contention of the defendant that he met the victim, a married woman, and during the process of showing the defendant several homes to buy, the victim consented to having sexual relations with him several times during the day. It was the position of the District Attorney that married jurors were preferable to single jurors."
Striking a prospective juror because of his or her marital status may be a sufficiently race-neutral reason if the juror's marital status is related to the case. In this case all the jurors except one were married. The prosecutor also stated at the Batson hearing that when he struck the jury he believed that the one unmarried juror was married.
"Under the facts of the present case being single was a valid reasons for striking the prospective juror, especially when the state has `struck non-black jurors for substantially the same reason. Such evidence of neutrality may overcome the presumption of discrimination.'"
Kelley v. State, 602 So.2d 473, 476 (Ala.Cr. App.1992), quoting Bedford v. State, 548 So.2d 1097, 1098 (Ala.Cr.App.1989). See also Carrington v. State, 608 So.2d 447 (Ala.Cr. App.1992); Mathews v. State, 534 So.2d 1129 (Ala.Cr.App.1988).
The reason for striking prospective juror number 59 was also race-neutral. He asked to be excused, stating that he had health problems. "A veniremember's indication that the member might have problems being on the jury in the case is ... a race-neutral reason for removing that person from the venire." Kelley, 602 So.2d at 476. See also Jackson v. State, 640 So.2d 1025 (Ala.Cr. App.1992); Gaston v. State, 581 So.2d 548 (Ala.Cr.App.1991); McGahee v. State, 554 So.2d 454 (Ala.Cr.App.), aff'd, 554 So.2d 473 (Ala.1989).
The primary reason given for striking juror number 56 was also race neutral and therefore did not violate the principles of Batson. The fact that a prospective juror knew one of the lawyers involved in the case is a race-neutral reason for striking that juror. Strong v. State, 538 So.2d 815 (Ala. Cr.App.1988).
The reason given for striking prospective jurors number 8 and 60 was also race neutral. "The fact that a family member of the prospective juror has been prosecuted for a crime is a valid race-neutral reason." Yelder v. State, 596 So.2d 596, 598 (Ala.Cr.App.1991). See also Powell v. State, 548 So.2d 590 (Ala.Cr.App.1988), aff'd, 548 So.2d 605 (Ala.1989). A juror's association with a known criminal is also a valid race-neutral reason for striking a prospective juror. Bedford v. State, 548 So.2d 1097 (Ala. Cr.App.1989).
Although the prosecution's information indicated that prospective juror number 60's father had served time in a federal penitentiary, she did not provide that answer on voir dire. However, the court went to great lengths to determine where the prosecutor had gotten his information before striking both jurors number 8 and 60. The record reflects that all of the notes made by the prosecutor during the voir dire selection were received into evidence at the Batson hearing and were available to defense counsel. The prosecutor further stated that it was his practice to pass around the jury lists to law enforcement officers so that they could make notes about the jurors. The prosecutor also stated during the hearing that he discovered prospective juror number 60's maiden name and knew that her father had been in federal prison. This is also indicated on his notes made during the voir dire of the prospective jurors, where the prosecutor named the individuals who supplied him with this information. We do not have a situation here where the trial court took at face value the reasons given by the prosecutor. Ex parte Thomas, 601 So.2d 56 (Ala.1992). The *519 trial court in this case was aware of Thomas and went to great lengths to determine the motive behind each strike. The court extensively questioned the prosecutor at the Batson hearing. We find this case distinguishable from Williams v. State, 620 So.2d 82 (Ala.Cr.App.1992), where this court reversed the trial court' judgment on a Batson violation because the only reason given for striking one of the jurors was that the district attorney "knew this juror through his drug work." We find this case similar to the recent cases of Naismith v. State, 615 So.2d 1323 (Ala.Cr.App.1993), and Jones v. State, 611 So.2d 466 (Ala.Cr.App.1992). Judge Bowen stated the following in Naismith:
"Here, the information from the police department was that the particular veniremember had either been arrested or convicted, so that the information obtained from the police department is not susceptible to the same objection as that obtained in Walker [v. State, 611 So.2d 1133 (Ala.Cr. App.1992)]....
"In Jones v. State, 611 So.2d 466 (Ala. Cr.App.1992), this Court addressed a factual situation very similar to that presented here and held that `[u]nder the circumstances presented here, the prosecutor's strike of veniremember # 4 on the ground that the sheriff's department had had "drug problems" with that person was racially-neutral.'
"`Our holding in Walker does not apply here because in this case the prosecutor had information from the sheriff's department concerning the basis for each peremptory strike and because the prosecutor did not "simply presume, without further questioning to `dispel any doubt,' that a veniremember who is under oath, did not answer a question truthfully merely because the prosecutor has hearsay evidence to the contrary." Walker, supra.
"`Here, the prosecutor did not exercise a "same name" strike. There is no indication that the sheriff's department was having drug problems with someone named "Carter" as opposed to this particular veniremember. Here, there was more than the "mere suspicion" of relationship. See Ex parte Bird, 594 So.2d 676, 683 (Ala.1991). See also Walker, supra ("A `prosecutor's self-imposed ignorance [should not] preclude a Batson claim.'" Id. quoting, Note, Batson v. Kentucky and the Prosecutorial Peremptory Challenge: Arbitrary and Capricious Equal Protection, 74 Va.L.Rev. 811, 827 (1988)). Compare Smith v. State, 590 So.2d 388, 390 (Ala.Cr.App. 1991) (wherein the court, in holding that the defendant may not cross-examine jurors or go behind the prosecutor's information to determine if such information was true, stated that a "prosecutor may strike from mistake, as long as the assumptions involved are based on an honest belief and are racially neutral").'
"Jones, supra."
611 So.2d at 470.
As this court stated in Christianson v. State, 601 So.2d 512, 516 (Ala.Cr.App.1992), quoting Scales v. State, 539 So.2d 1074, 1075 (Ala.1988):
"`We appreciate that it is impossible to know what is in the mind of another person, and that it is possible that, in stating his reasons for striking a member of the venire, a prosecutor may give a reason that is not the true reason, but we are convinced that the trial judges in our system are in a much better position than appellate judges to decide whether the truth has been stated.'"
At the Batson hearing, the defense presented one of the jurors who testified that the prosecution's information concerning her was incorrect. As this court has stated:
"`Neither Batson nor [Ex parte] Branch [, 526 So.2d 609 (Ala.1987),] mandates that a defendant be given the opportunity to cross-examine jurors or other witnesses in order to establish that the State's reasons are based on sham or pretext.... Branch does not encompass the cross-examination of jurors or allow a defendant to go behind a prosecutor's information to determine if such information was true.'"
*520 Jackson v. State, 593 So.2d 167, 171-72 (Ala. Cr.App.1991), quoting Smith v. State, 590 So.2d 388, 390 (Ala.Cr.App.1991). The prosecutor's strike based on a mistaken belief did not violate Batson. "A prosecutor may strike from mistake, as long as the assumptions involved are based on an honest belief and are racially neutral." Smith v. State, 590 So.2d 388, 390 (Ala.Cr.App.1991).
This court will not reverse a trial court's decision on a Batson violation unless that decision is "clearly erroneous." Gaston, supra. We do not find the trial court's decision here clearly erroneous.
For the foregoing reasons, the circuit court's judgment in this cause is due to be affirmed.
AFFIRMED.
All the Judges concur except BOWEN, P.J., dissents with opinion.
BOWEN, Presiding Judge, dissenting.
The majority states that prospective juror number 39 was struck because he "answered during the voir dire that he knew about the case and because he was also single." Juror number 39 did indicate that he "knew about the case," but so did 53 other veniremembers out of a total of 60 prospective jurors,[1] at least 11 of whom served on the jury,[2] and 10 of whom were white.[3]
It is obvious here that the district attorney engaged in disparate treatment of black veniremembers struck as opposed to white veniremembers possessing the same characteristics.
In addition to the fact that the State failed to strike white jurors "who answer[ed] a question [about their knowledge of the case] in the same or similar manner" as black jurors, Ex parte Branch, 526 So.2d 609, 623 (Ala.1987), the explanation that prospective juror number 39 was struck because he was single is contradicted by the actual voir dire, during which the veniremember stated, "My name is [B.M.]. I work for Avondale Mills. My wife is unemployed." R. 243 (emphasis added). An explanation that is refuted, or not borne out, by the juror's statements on voir dire is insufficient to overcome the presumption of racial discrimination. Ex parte Yelder, 630 So.2d 107, 110 (Ala.1992) (prosecutor's explanation that he struck veniremember because he "`couldn't understand a word she said,' [due to] `the way she put her sentences together'" was belied by veniremember's actual responses on voir dire); Jackson v. State, 594 So.2d 1289, 1293-94 (Ala.Cr.App.1991) (prosecutor's explanation that the veniremember was struck "because `it was shown through voir dire that she was acquainted with and lived close to an individual'" that the State was attempting to extradite, was discredited by record of voir dire that showed the veniremember knew the individual "only minimally and that her acquaintanceship with him occurred a number of years previous to th[e] trial").
*521 In short, as to the explanation offered as to the perceived bias of juror number 39, i.e., that he was "single," the record affirmatively shows that that explanation has no basis in fact.
Based on the insufficient reasons for striking prospective juror number 39 alone, I think the trial court's determination that the district attorney provided a race-neutral explanation for his strikes of black veniremembers is "clearly erroneous." See Ex parte Branch, 526 So.2d at 625. However, I also believe that the explanations given for the strikes of prospective jurors number 56 and 60 were highly suspect.
The assistant district attorney gave the following reason for striking juror number 60:
"I had done some checking on [this juror] through the town of Margaret where she was from. I found out her maiden name was reported to me to be Hopson. I had had dealings in law enforcement with the Hopson family. It was also reported to me that her father, Mr. Willie Hopson, had eithermy notes were not clearhad either been in prison or was in prison at that time on drug related matters in the Federal Prison. I also had information available to me through the D.A.'s office involving her husband's family involving criminal activities. I think I asked the jury venire if I had ever prosecuted them or any member of their family. I also asked if they had any family member that had ever been in prison. I don't remember [juror number 60] responding to that. My information was that her father had been." S.R. 14.
". . . .
"I know specifically her fathermy information was that I got from the community at that timeher father was Willie Hopson. He had been convicted by the Federal Courts in some drug related matter." S.R. 24.
To the extent that the strike of prospective juror number 60 was based on the district attorney's assessment that the juror displayed a lack of forthrightness by failing to answer the voir dire question about "family member[s] in prison," that assessment was not supported by the record of voir dire. The specific voir dire question was: "[I]s there anyone on the jury panel that has a relative or close friend, presently or in the past, in the State prison system?" R. 293 (emphasis added). A reasonable juror with a friend or relative in the federal penitentiary could conclude that the question dealt solely with the State prison system, as specified, especially since the district attorney inquired further whether the fact that any of the jurors had a relative or friend in the state penal system "would ... make [them] feel ill toward the district attorney because possibly people like us are responsible for putting a relative or loved one or friend in prison?" R. 294.
Although prospective juror number 60 was not obligated to answer the specific voir dire question asked, and her failure to speak up did not undermine her credibility, the district attorney would, nevertheless, have been justified in striking the prospective juror based solely upon his hearsay information that the juror's father had served time for a federal offense. See Heard v. State, 584 So.2d 556, 560 (Ala.Cr.App.1991). The credibility of that reason, however, was called into question by the fact that the district attorney failed to strike at least one[4] white veniremember who answered that he had a brother-in-law in prison. R. 293. That veniremember in fact served on the jury. See R. 333-34, 293.
The district attorney stated that he struck prospective juror number 56 because the veniremember was 86 years old, because he "probably could not hear the questions and... understand," and because "he acknowledged that he knew [defense counsel] personally." S.R. 12-13. The record supports the district attorney's assessment that the juror had a hearing problem, but the additional reason, that the juror knew defense counsel, is called into question by the prosecutor's failure to strike a white venireman who also acknowledged that he knew defense counsel. *522 R. 290. That veniremember, who actually served on the jury, was the same juror who answered that he had a brother-in-law in prison. R. 293.
Although the "age" rationale may have been a sufficiently race-neutral reason for striking juror number 60, and the "relative in prison" rationale may have sufficed as a non-discriminatory reason for striking juror number 56, when the record reveals that a white venireman, who was not struck and who in fact served on the jury, shared two characteristics used to justify the strikes of blacksthat he knew defense counsel and that he had a relative in prisonthe district attorney's stated reasons for striking black jurors appear to be a sham or pretext.
I appreciate the fact that this case, like Bui v. State, 627 So.2d 855 (Ala.Cr.App. 1992), was tried before Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); that several years elapsed between the striking of the jury and the time the prosecutor was required to give his reasons for eliminating black jurors; that the defense struck one black person; and that one black person actually served on the jury in this case.
However, I cannot conclude, as the Alabama Supreme Court did in Bui v. State, that the State provided particularly persuasive reasons for most of its strikes or that the trial judge displayed a "preemptive `sensitivity'" toward the issue of racial discrimination here. See Bui v. State, 627 So.2d at 860 (Adams, J., concurring specially). For example, the district attorney informed the trial court at the remand hearing that he had decided, prior to striking the jury, to eliminate single people, S.R. 9, but he did not "articulate how [being single] related to the case at hand or how [a single person] might have been perceived as biased because of [that status]." Instead, it appears that the trial court, in its order on return to remand, dated September 10, 1992, articulated for the district attorney how a juror's marital status related to the facts of the case:
"The District Attorney stated that it was their goal in jury selection to have jurors who were married. The primary defense of the defendant to the capital murder charges was that the defendant did not rape the victim.... It was the contention of the defendant that he met the victim, a married woman, and during the process of showing the defendant several homes to buy, the victim consented to having sexual relations with him several times during the day. It was the position of the District Attorney that married jurors were preferable to single jurors."
I dissent because I believe the trial court's finding of non-discrimination was clearly erroneous.
NOTES
[1] The trial court posed the following question to all 60 potential jurors, who had been divided into three panels of 20 jurors each:

"[I]s there anyone who has not heard [or] read anything on the television, in the newspapers, radio, discussions with other people, is there anyone who has not heard anything about the facts of this case?" R. 204, 245-46, 281 (emphasis added).
On Panel 1, sixteen of twenty jurors indicated that they had heard something about the case. R. 204-05. On Panel 2, all twenty jurors indicated that they had some knowledge of the case. R. 246. On Panel 3, eighteen of twenty jurors revealed that they had been exposed to some information about the case. R. 281. Thus, of 60 potential jurors, only 6 did not "know about the case."
[2] Of the twelve jurors and two alternates who actually served on the jury in this case, six had been on Panel 1, six had been on Panel 2, and two had been on Panel 3. Five of the six Panel 1 jurors "knew about the case." R. 333-34, 219-22, 204. All six Panel 2 jurors "knew about the case." R. 333-34, 240-44, 246. The record does not reveal the names of the two Panel 3 members who had heard nothing about the case, see R. 281, so I cannot determine whether those two venirepersons served on the jury. However, assuming that the two Panel 3 jurors who served on the jury were the same two who knew nothing about the case, then a minimum of 11 out of the 14 jurors who actually served here "knew about the case."
[3] Only one black juror served in this case. He had been a member of Panel 2 and had, along with every other member of that panel, indicated some prior knowledge of the facts of the case.
[4] Another veniremember, who is addressed only as "Ma'am," and whose name and race are not shown by the record of voir dire, answered that she had a son in prison. R. 293-94.