TJOFLAT, Circuit Judge,
dissenting:
The issue in this appeal according to the certificate of appealability (“COA”) the District Court issued[1] is “whether the State unconstitutionally exercised its peremptory challenges by striking African-American jurors on the basis of their race in violation of’ Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Alabama Court of Criminal Appeals decided that the strikes did not deny those jurors their right to serve on Ricky Dale Adkins’s jury on account of their race. Adkins v. State, 639 So.2d 515 (Ala.Crim.App.1993). Adkins argues that the court’s decision cannot be sustained because it is “based on an unreasonable determination of the facts,” 28 U.S.C. § 2254(d)(2) (2006), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), Pub.L. No. 104-132, 110 Stat. 1214 (1996); the State argues to the contrary. Today, this court adopts Adkins’s position, reverses the District Court’s decision adopting the State’s position, and directs the District Court to issue a writ of habeas corpus setting aside Adkins’s murder conviction and death sentence. I am convinced the court errs in ordering that the writ issue and therefore dissent.
Although, on its face, the opinion of the Court of Criminal Appeals states that the court decided a Batson claim, the COA poses a Batson issue and the parties have briefed that issue, I submit that the Court of Criminal Appeals, though its opinion purports to do so, did not decide a Batson claim at all; rather, it decided a state law claim bearing the Batson label. Accordingly, because the Court of Criminal Appeals adjudicated a determination of state law, the District Court lacked Article III power to review that determination. The same is true of this court.
I explain why in part III of this opinion, after describing, in part I, the circumstances that led to Billy Dean Hamilton’s murder and Adkins’s conviction, and in part II, the Alabama Supreme Court’s creation of the claim Adkins is asserting.
I.
The Alabama Court of Criminal Appeals described how Mrs. Hamilton’s murder oc *1259 curred in Adkins v. State, 600 So.2d 1054 (Ala.Crim.App.1991) (as corrected on denial of rehearing).
Mrs. Hamilton was a realtor. During the morning of Sunday, January 17, 1988, she left her home to put out some real estate signs and to go to her office to do some paperwork. As she was putting out a sign, Adkins drove up in a Ford Bronco and told her that he was looking for a house to buy. She agreed to show him some that were for sale and got into his Bronco. According to Adkins at trial, after seeing three or four houses, “they stopped at a park, and ‘held hands and kissed.’ ” Id. at 1058. They stayed there for about thirty minutes, then left to look at more houses. “At one of the vacant houses they looked at, [Adkins] claim[ed], Mrs. Hamilton voluntarily had sex with him twice.” Id. That evening, after visiting with the owners of one of the houses for sale, Mrs. Hamilton, according to Adkins, “directed him down a dirt road for one last sexual encounter.” Id. at 1059. He put his sleeping bag on the ground and said that they “ ‘talked about the stars and the night.’ ” Id.
[A]fter they finished having sex, he put the sleeping bag back in the Bronco and told Mrs. Hamilton to hurry and get dressed. [He] claims that [she] called him a “bastard” and that he told her that she was “nothing but a whore.” At this, he said, [she] slapped him. [He] stated that as [she] bent over to pull her jeans up, he hit her in the back of the head with a wrench. [He] said he next remembered seeing his victim lying on the ground with blood on her body. He admitted slashing both of her wrists. He says he then got in the Bronco and left.
Id. Dr. Joseph Embry, a pathologist with the Alabama Department of Forensic Sciences, performed the autopsy.
Dr. Embry observed seven very deep lacerations to the victim’s scalp. There was a stab wound to the upper abdomen which was six and a half inches long. It extended into the liver, stomach, and heart.
There were six small scratches on the victim’s left buttock which were consistent with fingernail scratches. She also had a bruise on the inside of her left thigh. There were bruises, scrapes and lacerations on both hands. [He] testified that these were defense wounds.
When [he] examined the victim’s oral cavity and lungs, her mouth and throat were filled with dirt and small rocks that went through her larynx all the way down into her lungs. It was this impacted dirt in the victim’s airway, in association with the stab wounds and blunt force trauma to the head, that caused the victim’s death. [He] testified that the incisions through the tendons of the victim’s wrists appeared to be post-mor-tem because there was no bleeding in the wounds.
Id. at 1059-60.
The jury convicted Adkins of capital murder and, by a vote of 10 to 2, recommended that he receive the death penalty. The Circuit Court followed the recommendation and sentenced Adkins to death. Adkins then appealed his conviction and sentence.
II.
The Court of Criminal Appeals affirmed Adkins’s conviction and death sentence on January 18, 1991. Adkins v. State, 600 So.2d 1054, 1067 (Ala.Crim.App.1991). The Alabama Supreme Court thereafter granted Adkins’s petition for certiorari review. Ex parte Adkins, 600 So.2d 1067, 1068 (Ala.1992). While the case was being briefed in that court, the United *1260 States Supreme Court decided Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), which held that, under the Equal Protection Clause, “a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same races.” Id. at 402, 111 S.Ct. at 1366 (emphasis added). Citing Powers, Adkins urged the Alabama Supreme Court to invoke Alabama’s “plain error” doctrine[2] and remand the case to the Circuit Court for a hearing on whether the prosecutor had used any of the State’s peremptory challenges to discriminate against black members of the venire. The Supreme Court noticed plain error[3] and, after affirming “each of the issues presented to [the Court of Criminal Appeals],” Ex parte Adkins, 600 So.2d at 1068, remanded the case for a hearing on the issue of whether, under Powers, “the State improperly exercised its peremptory challenges by striking black jurors on the basis of their race,” id. at 1069.[4]
On remand, the Circuit Court, following the Alabama Supreme Court’s instructions (albeit implicit), used the three-step inquiry the United States Supreme Court fashioned in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986),[5] in deciding whether the prosecutor peremptorily challenged the black jurors solely because of their race. The first step required Adkins to make a prima facie showing that the prosecutor “exclude[d] [an] otherwise qualified and unbiased person[ ] from the petit jury solely by reason of [his or her] race.” Powers, 499 U.S. at 409, 111 S.Ct. at 1370. The Alabama Supreme Court had already made that prima facie showing for Adkins when, under the “plain error” doctrine, it ordered his case “remanded to the circuit court for a hearing on” the “Batson issue.” Ex parte Adkins, 600 So.2d at 1069. The Circuit Court therefore began with the second step of the inquiry, requiring the prosecutor to offer a race-neutral reason for each of his strikes. After the prosecutor came forward with his reasons, the court took the third step, inquiring whether Adkins had proven that the prosecutor had struck any of the nine blacks solely because of the person’s race. At the conclusion of the inquiry, the court credited the prosecutor’s representation that he struck the blacks for non-racial reasons and upheld the constitutionality of his strikes.
*1261 On return from remand, the Court of Criminal Appeals, “[a]fter a careful review of the reasons given by the prosecutor and after examining the testimony taken at the Batson hearing, ... f[ound] that no Batson violation occurred.” Adkins v. State, 639 So.2d 515, 517 (Ala.Crim.App.1993). The court therefore affirmed the Circuit Court’s judgment. Id. at 520.
The majority of this panel faults the Court of Criminal Appeals’ decision because the Court of Criminal Appeals “did not give any consideration at Batson’s third step to several relevant circumstances raised by Adkins in his brief on return to remand to that court.” Ante at 1252. For example, the court “gave no consideration to the strength of Adkins’s prima facie ease at Batson’s third step,” id.; to “the fact that specific proffered reasons provided by the prosecutor were contradicted by the record,” id.; or to “the fact that the trial court relied on evidence that was not tested by the adversarial process of cross-examination,” id. at 1253, i.e., the prosecutor’s affidavit stating that he “struck Morris under the mistaken belief that he was single,” id. at 1253. Given these shortcomings in the Court of Criminal Appeals decision, the majority concludes that the Court of Criminal Appeals “unreasonably applied Batson because it failed to consider crucial facts which Adkins raised in his brief to that court relevant to Batson’s third step,” and therefore failed to review “ ‘all relevant circumstances’ as required by Batson.” Id. at 1255. As a consequence, the Court of Appeals decision is afforded no AEDPA fact-finding deference, id.; see 28 U.S.C. § 2254(e)(1) (“[A] determination of a factual issue made by a State court shall be presumed to be correct.”), and this court reverses the judgment of the District Court, instructing the District Court “to issue the writ of habeas corpus conditioned on the right of the State of Alabama to retry Adkins.” Ante at 1258.
III.
The federal habeas corpus statute, 28 U.S.C. § 2254, as amended by AEDPA, Pub.L. No. 104-132, 110 Stat. 1214 (1996), and interpreted by the United States Supreme Court, forbids a federal court from reviewing a state court conviction to grant a writ of habeas corpus unless the state court adjudication of the claim “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). The phrase “clearly established Federal law” refers only to “the holdings, as opposed to the dicta,” of the Supreme Court decisions extant at the time of the state court adjudication. Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000) (emphasis added).
The first task the District Court faced in this case in reviewing the Alabama Court of Criminal Appeals decision was to determine whether that court “adjudicated [a federal constitutional claim] on the merits.” 28 U.S.C. § 2254(d). According to the parties, the Court of Criminal Appeals adjudicated a Powers claim using the Bat-son three-step inquiry. To possess a Powers claim or a Batson claim, a defendant must have objected to the prosecutor’s exercise of a peremptory challenge for a discriminatory purpose, to exclude the ven-ireperson from jury service. See United States v. Tate, 586 F.3d 936, 943 (11th Cir.2009) (“Under the law of this Circuit, a defendant forfeits a Batson claim if he or she fails to object on this ground in the district court.”).[6] “[A] Batson objection must be exercised before the venire is *1262 dismissed and the trial commences.” Id[7] Requiring an objection prevents “sandbagging.” United States v. Pielago, 135 F.3d 703, 709 (11th Cir.1998) (“The contemporaneous objection rule fosters finality of judgment and deters ‘sandbagging,’ saving an issue for appeal in hopes of having another shot at trial if the first one misses.”).[8]
Adkins did not have a Powers claim because he did not object to any of the prosecutor’s peremptory strikes.[9] That the Circuit Court on remand and the Court of Criminal Appeals on return to remand may have thought they were deciding a Powers claim does not mean that Adkins had a viable Powers claim — that Powers’s holding required the Alabama *1263 Supreme Court to remand the case for a Batson hearing. What those courts were doing on remand was resolving an equal protection of the laws issue — whether any of the nine blacks were struck from the venire due to race — using Batson’s three-step inquiry.
An equal protection issue like the one in Ex parte Adkins arises whenever the Court of Criminal Appeals (or the Supreme Court on certiorari review as in Ex parte Adkins), in discharging its statutory obligation to search the record in death cases for plain error,[10] finds that the defendant had grounds to object to the prosecutor’s strike of a prospective juror due to the juror’s race, but did not. Once that finding is made, the case must be remanded to the trial court for a Batson hearing. At the hearing on remand, because a pri-ma facie case of race discrimination has already been found by the appellate court, the trial court begins with Batson’s second step, and if the prosecutor provides race-neutral reasons for the strikes at issue, the court moves to the third step and determines “whether the defendant has carried his burden of proving purposeful discrimination.” Floyd v. State, — So.3d-, -, 2012 WL 6554696, at *1 (Ala.Crim. App. Dec. 14, 2012) (quoting Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991)) (internal quotation marks omitted).
The Alabama courts refer to this plain error-generated equal protection issue as a Powers claim or a Batson claim. Where the equal protection issue is gender-based, the courts refer to the issue as a J.E.B. claim. See J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (applying Batson and Powers to gender-based discrimination).
In Ex parte Floyd, — So.3d -, ---, 2012 WL 4465562, at *6-11 (Ala. Sept.28, 2012) (Murdock, J., concurring in the result), Justice Murdock, criticizing the Supreme Court’s creation of this equal protection claim by noticing plain error, explained why the claim is not rooted in the Batson, Powers, and J.E.B. decisions but, instead, was the court’s creation. In that case, Christopher Anthony Floyd was convicted of capital murder and sentenced to death. On appeal, Floyd argued that the prosecutor had exercised the State’s peremptory challenges to strike blacks and women from the venire for the purpose of excluding them from jury service on account of their race and sex. Floyd v. State, — So.3d-,-, 2007 WL 2811968, at *1 (Ala.Crim.App. Sept.28, 2007). Floyd had not objected to the strikes in the trial court, and therefore asked the Court of Criminal Appeals to notice plain error, citing Batson, Powers, and J.E.B. The Court of Criminal Appeals concluded that the record established an inference of purposeful race- and gender-based discrimination and remanded the case to the trial court for a Batson hearing. Id. at-, at *3.
On remand, the trial court found that the prosecutor’s reasons for the strikes were race- and gender-neutral. On return to remand, the Court of Criminal Appeals affirmed the trial court’s findings and affirmed Floyd’s murder conviction and death sentence. Id. at-, at *33 (opinion on return to remand, Aug. 29, 2008).
On writ of certiorari, the Alabama Supreme Court reversed and instructed the Court of Criminal Appeals to remand the ease again to the trial court for findings of fact and conclusions of law as to whether the prosecutor’s reasons for striking *1264 blacks and women were race- and gender-neutral and whether the defendant had carried his burden of proving purposeful discrimination. Ex parte Floyd, — So.3d -,-, 2012 WL 4465562, at *6 (Ala. Sept.28, 2012).[11]
Justice Murdock, joined by Justices Malone and Bolin, concurred in the result but opposed the practice of giving defendants who had waived their Batson, Powers, and J.E.B. objections at trial an opportunity for a Batson hearing in the trial court for the purpose of having the State offer nondiscriminatory reasons for its peremptory strikes. In Justice Murdock’s opinion, what his court was doing was contrary to the holdings in Batson and its progeny:
[T]he three-step evidentiary inquiry prescribed by Batson as a tool for ferreting out purposeful discrimination was intended only for use in “real time” during the trial in which the alleged discrimination occurs and ... the right to initiate a Batson inquiry is waived if not exercised contemporaneously with the selection of the jury and cannot be revived based on a plain-error review in an appeal after the trial is concluded.
Floyd,, — So.3d at -, 2012 WL 4465562, at *6 (Murdock, J., concurring). Justice Murdock continued
I have found no federal cases that hold to the contrary or that even stand as contrary physical precedent. That is, I have found no federal cases in which the court has used a “plain error” review to initiate a Batson inquiry on appeal when the defendant failed to initiate that inquiry during the trial. There appear to be good reasons why it is so difficult to find such a case.
Id. (emphasis in original). In his.view,
[TJhere [we]re sound “policy” reasons why a Batson inquiry, if it is to be conducted, must be conducted at trial contemporaneously with the jury-selection process that is its subject. If the inquiry is launched before the jury is sworn or before the venire is excused, remedies other than reversal and retrial are available. More importantly, in most cases, the type of inquiry contemplated by Batson simply cannot be undertaken in any meaningful way months or years after the trial. Pretrial research regarding jurors and real-time notes taken during voir dire may have been lost, and, more importantly, unwritten memories and impressions of body language, voice inflections, and the myriad of other nuances that go into striking jurors likely will have faded, not only for counsel, but also for the judge who must evaluate the positions of both the defendant and the prosecutor in the context of his or her own observations at trial (and who, in some cases, will have even left the bench in the meantime).
Id. at-, at *7. Justice Murdock amplified the Batson Court’s recognition that “ ‘a finding of intentional discrimination is a finding of fact’ and that ‘the trial judge’s findings ... largely will turn on evaluation of credibility,’ ” id. at-, at *8, with this quotation from Snyder v. Louisiana:
The trial court has a pivotal role in evaluating Batson claims. Step three of the Batson inquiry involves an evaluation of the prosecutors credibility, and “the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge.” In addition, race-neutral reasons for peremptory challenges often invoke a jurors demeanor (e.g., nervousness, inattention), making the trial courts firsthand observations of even greater im *1265 portance. In this situation, the trial court must evaluate not only whether the prosecutor’s demeanor belies a discriminatory intent, but also whether the jurors demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. We have recognized that these determinations of credibility and demeanor lie “peculiarly unthin a trial judges province,” and we have stated that “in the absence of exceptional circumstances, we would defer to [the trial court].”
552 U.S. 472, 477, 128 S.Ct. 1203, 1208, 170 L.Ed.2d 175 (2008) (internal citations omitted) (emphasis in original).
An obvious reason for abandoning this plain error practice in cases like Adkins and Floyd is the effect it must have on trial judges in capital cases. Nothing is more onerous for trial judges than having to try a criminal case twice, especially a capital case in which the State is seeking the death penalty. Because the holdings in Batson, Powers, and J.E.B. condemn the discriminatory exercise of peremptory challenges based on race and gender, a trial judge, to ensure that the case will not be remanded for a Batson hearing, will be tempted to require the prosecutor to provide race- or gender-neutral reasons for many if not all of the State’s strikes.[12] The practical effect of the possibility of a later Batson hearing would be to eliminate the peremptory challenge in death cases. Nothing in Batson, Powers, or J.E.B. requires the Alabama courts to go to that extreme.[13]
The majority treats the Alabama Court of Criminal Appeals decision as having adjudicated a federal constitutional claim on the merits for purposes of 2254(d) because the State, in the District Court and in its brief on appeal, agreed that the decision adjudicated a Batson claim. It argues that United States v. Nealy, 232 F.3d 825 (11th Cir.2000), and United States v. Ardley, 242 F.3d 989 (11th Cir.2001), therefore bar the State from switching positions and arguing that the decision at issue adjudicated a state law claim.
Our decisions in Ardley and its progeny involve direct appeals of federal court convictions, not habeas petitions. In the Ard-ley appeal, we declined to retroactively apply the Supreme Court’s decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which was decided after the appellant was convicted but before his conviction became final, because he had not, raised the Apprendi issue in his opening brief on appeal. United States v. Ardley, 273 F.3d 991, 1007 (11th Cir.2001). Since Ardley, we have repeatedly followed the prudential rule that we will not consider the merits of *1266 issues not raised in the opening brief, even where they would be resolved in appellant’s favor but for his failure to anticipate the new rule of law in his opening brief. See United States v. Levy, 391 F.3d 1327, 1328 (11th Cir.2004) (denying appellant’s petition for rehearing after his conviction had become final because he had failed to raise a claim under Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), until his petition for rehearing); United States v. Dockery, 401 F.3d 1261, 1262-63 (11th Cir.2005) (holding that the appellant had abandoned his claim under United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), by failing to address the claim Booker created in his opening brief on appeal); United States v. Vanorden, 414 F.3d 1321, 1323 (11th Cir.2005) (holding that appellant had abandoned any Apprendi-Blakely-Booker claim by failing to brief it); United States v. Higdon, 418 F.3d 1136, 1137 (11th Cir. 2005) (Hull, J., concurring in denial of rehearing en banc) (declining to reconsider panel’s denial of appellant’s motion to file a supplemental brief raising a claim under Blakely).
Although these decisions would seem at first blush to bar our consideration of the State’s argument that the Court of Criminal Appeals did not adjudicate a federal constitutional claim, I submit that the prudential rule on which they are based must give way to the policies AEDPA seeks to implement, namely the interests of federalism, comity and finality of state criminal convictions. See Federal Habeas Corpus Reform: Eliminating Prisoners’ Abuse of the Judicial Process: Hearing before the S. Comm, on the Judiciary, 104th Cong. 1, 10, 23, 30-31 (1995) (statements of Sen. Orrin Hatch; Lee Chancellor, Vice President, Citizens for Law and Order, Oakland, Calif.; Sen. Strom Thurmond; and Daniel E. Lungren, California Attorney General). As I have written before, waiver “applies to the right of a litigant to have his claim heard .... The scope of a petitioner’s rights has no bearing on this court’s power. It is beyond dispute that, in general, we have the power to consider issues that a party fails to raise on appeal, even though the petitioner does not have the right to demand such consideration.” Thomas v. Crosby, 371 F.3d 782, 793 (11th Cir.2004) (Tjoflat, J., specially concurring). The Supreme Court has said, “The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.” Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976).
Our task in this case is to determine whether the Alabama Court of Criminal Appeals decision falls within § 2254(d)(1) or (2).[14] In the context of a habeas petition, we would be remiss if we did not consider sua sponte whether the petitioner has a federal constitutional claim. Because Adkins did not object to the allegedly discriminatory peremptory strikes, he did not preserve his Powers claim. The Alabama courts thus adjudicated a state law claim, and we should not grant federal habeas relief under AEDPA.
In sum, the Alabama Court of Criminal Appeals decision under consideration did not adjudicate a claim contrary to a holding of the United States Supreme Court. *1267 For that reason, the judgment of the District Court should be affirmed.

. See 28 U.S.C. § 2253(c).

.The plain error doctrine is a statutory creation to be used in capital cases in which the death penalty is imposed. Rule 45A, Alabama Rules of Appellate Procedure, "Scope of review in death cases,” states:
In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant.
In Adkins's case, the Court of Criminal Appeals could not have noticed plain error on the basis of Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), because Powers was decided after the court had affirmed Adkins’s conviction and sentence.

. The court cited Ex parte Bankhead, 585 So.2d 112 (Ala.1991), as its authority.

. The Supreme Court remanded the case to the Court of Criminal Appeals; it, in turn, remanded the case to the Circuit Court for the hearing. Adkins v. State, 639 So.2d 515 (Ala. Crim.App.1993).

. The three-step model in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), is akin to the model the Supreme Court created in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for adjudicating Title VII claims of racial discrimination in employment, where, say, a member of a protected class claims that he or she was denied employment or a promotion due to race.

. It is of no consequence that Powers had not been decided at the time of Adkins’s trial. For new rules of conduct of criminal trials to *1262 apply retroactively, defendants must preserve their constitutional claims with objections. See Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); see also Jones v. Butler, 864 F.2d 348, 363-64 (5th Cir.1988) (declining to excuse petitioner’s failure to object to allegedly discriminatory peremptory strike even though Batson had not been decided at the time of his trial because "the claim was familiar and had been asserted in many other cases.... 'Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default.’ ” (quoting Engle v. Isaac, 456 U.S. 107, 134, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982))).

. In United States v. Tate, the appellant argued that the district court erred because it "failed to elicit or even provide counsel an[] opportunity to object.” 586 F.3d 936, 943 (11th Cir.2009) (internal quotation marks omitted). This court "declin[ed] the invitation” to create a new rule mandating that district courts provide counsel with an opportunity to raise Batson objections. Id. at 944.

. The majority notes that "state courts are free to fashion and enforce their own procedural rules to require that defendants make contemporaneous objections to preserve constitutional claims,” ante at 1247, but that Alabama courts did the opposite in this case— they excused Adkins's failure to object. The majority then notes that it is not our province to “dictate to the state courts of Alabama which procedural rules they should adopt.” Ante at 1249. Although it is true that Alabama courts are free to allow an equal-protection challenge to a peremptory strike without a contemporaneous objection as a matter of state law, they are not free to excuse the requirement of an objection as a matter of federal constitutional law. The Supreme Court has never explicitly defined "timely” in the context of a Batson challenge, but several of our sister circuits have noted that the Supreme Court in Batson plainly envisioned an objection during juiy selection. These circuits have refused to grant a writ of habeas corpus where the petitioner did not preserve his claim with an objection. See Haney v. Adams, 641 F.3d 1168, 1169 (9th Cir.2011) (holding that a petitioner may not bring a Batson claim in his habeas petition if he did not object to the peremptory strikes during his state trial); McCrory v. Henderson, 82 F.3d 1243, 1249 (2d Cir.1996) (reversing a district court’s grant of a writ of habeas corpus where the defendant did not preserve his claim of a discriminatory peremptory strike with a contemporaneous objection); Jones v. Butler, 864 F.2d 348, 369 (5th Cir.1988) (denying rehearing en banc regardless of whether Louisiana state courts applied a state procedural bar because "a contemporaneous objection to the use of peremptory challenges to exclude jurors on the basis of race is a necessary predicate to later raising a Batson claim”). Because Adkins did not meet this “necessary predicate” to a federal constitutional claim, he may not ask for federal habeas relief.

.The Alabama Supreme Court would undoubtedly agree that if Adkins were not a death case reviewed under Rule 45A, Alabama Rules of Appellate Procedure, Adkins would not have a Powers claim — because he did not object to any of the prosecutor's strikes. This underscores my point that, in Ex parte Adkins, the Alabama Supreme Court fashioned an equal protection rule that applies only in death cases. The rule does not apply in non-death cases. In those cases, a defendant cannot seek a remand for a Batson hearing unless he objected to the prosecutor’s peremptory strike before the jury is empaneled.

. If the Court of Criminal Appeals has not found sufficient indicia to create an inference of unlawful discrimination, there would be no reason to remand the case for a Batson hearing.

. The Court of Criminal Appeals, on receipt of the Supreme Court’s mandate, remanded the case to the trial court with the Supreme Court’s instructions. Floyd v. State,-So.3d -, 2012 WL 6554696 (Ala.Crim.App. Dec. 14, 2012).

. Defense counsel, who like the prosecutor is a state actor when exercising peremptory strikes, Edmonson v. Leesville Concrete Co., 500 U.S. 614, 628, 111 S.Ct. 2077, 2087, 114 L.Ed.2d 660 (1991), also denies a venireper-son the equal protection right to jury service when not objecting to what appears to be an unconstitutional strike. The Supreme Court’s opinion remanding Adkins’s case for a Batson hearing is silent regarding the relevance of evidence that defense counsel, in failing to object, might be complicit in the presumed racial discrimination by the State.

. One of the reasons why the Batson, Powers, and J.E.B. holdings do not go to such an extreme is this: When defense counsel does not object to the prosecutor’s strike, defense counsel is indirectly informing the court that it would be in the best interest of counsel’s client that the challenged venireperson not serve on the jury, that, in counsel’s mind, it is doubtful whether the venireperson would be impartial and reach a fair verdict. Given this evidence — the failure to object and the communication it yields — the inference that the venireperson is being challenged in violation of the Equal Protection Clause is problematic. If that inference is problematic, whether the inference is strong enough to establish a case of unlawful discrimination is likewise problematic.

. See Harrington v. Richter, - U.S. -, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) ("Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported ... the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.”).